1          UNITED STATES DISTRICT COURT
           SOUTHERN DISTRICT OF FLORIDA
2
              Case No. 15-81606-CIV-KAM
3
RYAN COWELL,                    )
4                               )
        PLAINTIFF,              )
5                               )
        -v-                     )
6                               )
ALIBI, LTD, ET AL.,             )
7                               )
        DEFENDANTS.             )    West Palm Beach, Florida
8                               )    July 22, 2016
_____)
9

10        TRANSCRIPT OF MOTION HEARING PROCEEDINGS

11       BEFORE THE HONORABLE KENNETH A. MARRA

12            UNITED STATES DISTRICT JUDGE

13

14    Appearances:

15    (On Page 2.)

16

17    Reporter                  Stephen W. Franklin, RMR, CRR, CPE
      (561)514-3768             Official Court Reporter
18                              701 Clematis Street
                                West Palm Beach, Florida  33401
19                              E-mail:  SFranklinUSDC@aol.com

20

21

22

23

24

25

```
1    Appearances:

2    FOR THE PLAINTIFF           Michelle Otero Valdes, ESQ.
                                 Chalos & Co., P.C.
3                                2030 South Douglas Road
                                 Suite 117
4                                Coral Gables, FL 33134
     -and-
5                                Manuel E. Valdes, ESQ.
                                 Chalos & Co., P.C.
6                                2030 South Douglas Road
                                 Suite 117
7                                Coral Gables, FL 33134
     -and-
8                                C. Brooks Ricca, Jr.
                                 C. Brooks Ricca Jr. & Assoc., PA
9                                The Barristers Building
                                 1615 Forum Place, Suite 200
10                               West Palm Beach, FL 33401
     -and-
11                               Henry B. Handler, ESQ.
                                 Weiss, Handler & Cornwell, PA
12                               2255 West Glades Road
                                 Suite 218-A
13                               Boca Raton, FL 33431

14   FOR THE DEFENDANTS          Robert D. McIntosh, ESQ.
                                 McIntosh Schwartz, P.L.
15                               888 Southeast 3rd Avenue
                                 Suite 500
16                               Fort Lauderdale, FL 33335

17                               * * * * *

18

19

20

21

22

23

24

25
```

```
 1            (Call to the order of the Court.)

 2            THE COURT:  Good morning, please be seated.

 3            All right.  We are here in the case of Cowell versus

 4   Alibi, LTD, et al., Case Number 15-81606-CIV-MARRA.

 5            May I have counsel state their appearances, please.

 6            MS. OTERO VALDES:  Michelle Otero Valdes, on behalf

 7   of intervening plaintiff Ryan Black, derivatively on behalf of

 8   Palm House, LLC, Your Honor.

 9            THE COURT:  Good morning.

10            MS. OTERO VALDES:  Next to me is Mr. Black.  Next to

11   me is my husband, Manuel Valdes, who's going to be assisting

12   me with some of the exhibits.

13            THE COURT:  Good morning.

14            MS. OTERO VALDES:  Gentlemen.

15            MR. RICCA:  Your Honor, Brooks Ricca, co-counsel

16   with Ms. Valdez, for the intervening plaintiff.

17            THE COURT:  Good morning.

18            MR. HANDLER:  Your Honor, good morning.  Henry

19   Handler, on behalf of Palm House Hotel, LLP.  We filed a

20   motion to intervene yesterday.  We are the lender who put the

21   money into play, and we're seeking a claim with regard to the

22   money to return it to a receiver appointed in the state court

23   in order for the appropriate parties to be determined and the

24   money used for the hotel for the intended purpose of the loan.

25            THE COURT:  Okay.  I know you moved to intervene
```

```
 1    yesterday, but do you plan on participating today?

 2             MR. HANDLER:  Only if asked by the Court.

 3             THE COURT:  Okay.

 4             MR. McINTOSH:  Good morning, Your Honor.  Robert

 5    McIntosh for the defendants, and Bob Matthews is here at the

 6    table with me.

 7             THE COURT:  Good morning.

 8             All right.  We ready to go forward?

 9             MS. OTERO VALDES:  Yes, Your Honor, on the hearing

10    for order to show cause.

11             Your Honor, what I propose is to give my opening

12    statement and then begin presenting -- giving the defense the

13    opportunity to also do their opening statement, and then begin

14    with the witnesses.

15             Does that please the Court?

16             THE COURT:  That's fine.

17             MS. OTERO VALDES:  All right.  Great.

18             Your Honor, this is a case about who owns a vessel

19    that was purchased with misappropriated funds from the

20    intervening plaintiff and put in the name not of the

21    intervening plaintiff, but of the misappropriator.

22             Now, we've got a bunch of parties, so I will get the

23    Court situated with the parties, the vessel, and then go into

24    the law, and then explain what, in fact, is going to be shown

25    today.
```

1          At all times material hereto, Mr. Black was a member

2     of Palm House, LLC.  Palm House -- and I'll just keep

3     referring to them as Palm only, is the sole member of 160

4     Royal Palm, LLC.  I'll call them Royal Palm.  Palm House

5     Hotel, LLLP, who's now moved to intervene in this action,

6     provided a loan to Royal Palm to construct and renovate a club

7     hotel known as the Palm House Hotel & Club.  Royal Palm then

8     assigned its interest in the loan to Palm on August 30th of

9     2013.

10          THE COURT:  I hope you have a flowchart for me.

11          MS. OTERO VALDES:  One of the exhibits, Your Honor,

12     will set some of this out.

13          Under the terms of the loan, no funds were to be

14     distributed other than is necessary for the renovation and

15     remodeling of the hotel.  The in personam defendants, it is

16     our position, began a designative course of behavior to

17     defraud the lender and Palm and misappropriate the loan funds

18     for the purchase and operating of a vessel named Alibi.

19          Now, the Alibi, she's a 46.12-meter pleasure yacht.

20     She'll be referred to some documents you'll see later, Your

21     Honor, as a 151 Delta.

22          On June 18th of 2014, Mr. and Mrs. Matthews formed

23     Alibi, LTD, a Cayman Islands corporation, and on that same

24     date, according to documents, Alibi, LTD purchased the yacht,

25     then named D'Natalin, for the purchase price of $5.75 million.

1          Now, the purchase of the yacht.  The purchase

2     agreement for Alibi provided that a 10 million (sic) deposit

3     was required.  The loan documents for Alibi provided that

4     another $500,000 had to be put into the vessel within 150 days

5     of purchase.  The accounting records for Palm House clearly

6     show that not only was that 1.5 million that I've just

7     referenced, which was the deposit plus the 500,000 to add to

8     the vessel, was paid with hotel loan funds, and another

9     $500,000 was paid with loan funds that was used to support the

10    operation of the vessel, including to repainting the vessel,

11    dockage of the vessel and some other items that Your Honor

12    will see later.

13          Now, intervening plaintiff takes the position that

14    valid maritime claims and the funds should remain in the court

15    registry.  The burden that we have, Your Honor, under an

16    E(4)(f) hearing, we need only demonstrate reasonable grounds,

17    or otherwise known as probable cause, to sustain the funds

18    remaining with the court registry.  The purpose of this

19    hearing today is not to resolve definitively the dispute

20    between the parties, but to only make a preliminary

21    determination whether there was reasonable grounds for issuing

22    the arrest warrant, or in this case, the funds having put into

23    the registry of the Court.  As you recall, we had a hearing

24    earlier on that issue.

25          The Court here is not to conduct a mini trial at

```
 1   this stage of the case.  So what I would ask the Court to do
 2   is as we're presenting witnesses, at any time the Court feels
 3   that we've met our burden for probable cause, you let us know
 4   so that we don't keep producing witnesses.  I think that would
 5   be helpful for both side says, Your Honor.
 6            Now, Supplemental Admiralty Rule D.
 7            THE COURT:  So I'm supposed to, before the end of
 8   the hearing, tell you that you're getting warm?
 9            MS. OTERO VALDES:  That's fine.  Whatever you
10   prefer, Your Honor.  I always give the Court the option.
11            Now, Rule D provides that actions for possession --
12   we've had three causes of action, Your Honor.  We have
13   partition, possession and betterment.  Now, under Rule D,
14   actions for possession, partition and to try title are
15   maintainable according to the course of the admiralty practice
16   with respect to a vessel, quote, in all actions maintainable
17   with respect to the possession of cargo or other maritime
18   property, and in all actions by one or more part owners
19   against the others, to obtain security for the return of the
20   vessel from any voyage undertaken without their consent.  And
21   I highlight --
22            THE COURT:  You need to slow down --
23            MS. OTERO VALDES:  Sorry, Your Honor.
24            THE COURT:  -- for the reporter.  I can hear you,
25   but the reporter needs to be able to keep up with you.  You're
```

1    going quick.

2              MS. OTERO VALDES:  That's fine, Your Honor.

3              THE COURT:  Say that again.

4              MS. OTERO VALDES:  Yes.

5              Or by one or more party owners against the others to

6    obtain possession of the vessel for any voyage on giving

7    security for its safe return.

8              Now, as I mentioned, there are three bases for our

9    action.

10             Petitory suit, that's count 1.  Petitory suits in

11   which it is sought to try the title of the vessel

12   independently of any possession of the vessel.  That's

13   essentially count 1.

14             Possessory actions are actions to recover vessels or

15   other property to which an owner is, of right, entitled.  The

16   party urging the Rule D action has to have one of two things,

17   legal title or a legal claim to possession in order for the

18   Rule D arrest to stand.

19             I refer the Court to the case of Santiago versus

20   Evans, 2012 United States District Court Lexis 109644, Middle

21   District of Florida, June 21 of 2012.  That case is a very

22   good case for the Court to look at, because it really sets out

23   the requirements for Rule D.

24             Our main argument here today is that Mr. Black has

25   legal title to, or otherwise has a claim to, possession rather

1  than actual legal title.

2        Now, courts have routinely held that federal courts

3  have admiralty jurisdiction where the parties allege

4  ownership, rights to immediate possession, unlawful taking and

5  detention, or damages caused to the vessel by conduct.  Courts

6  have consistently recognized the maritime nature of questions

7  involving title and possession of vessels.  This is why we

8  have admiralty jurisdiction.

9        We will show that Alibi, LTD was not the true and

10  proper owner Alibi, as the purchase was obtained using

11  misappropriated funds from Palm House.  The funds at issue

12  were placed in the trust account of Leslie Robert Evans &

13  Associates, attorneys in Palm Beach, and that the defendants

14  misappropriated those funds from that account to purchase the

15  vessel.  The deposit for the vessel was obtained by using the

16  loan funds belonging to the hotel.  The deposit for the vessel

17  was not purchased by funds from any of the defendants, only

18  from the hotel.

19        Alibi suggests that Palm only asserted an equitable

20  interest in the vessel, to suggest that Rule D claims

21  asserting only equitable interest, has no basis in admiralty

22  jurisdiction.  However, Palm does not assert an equitable

23  interest in this vessel, but rather, Palm asserts that the

24  money used to purchase, operate and make improvements to the

25  vest were all derived from Palm, thereby rendering Palm the

 1    actual owner of this vessel.

 2          What the defendant is trying to do is to suggest

 3    that they are the actual owner of the vessel, as they were a

 4    good-faith purchaser of the vessel from its previous owner.

 5    However, that argument is an affirmative defense to a claim

 6    and not appropriate for a Rule E(4) hearing.  And I cited the

 7    Court, there's several cases, one of which is Matter of T.F.

 8    Stone Co., Inc., 72 F.3D 6 -- sorry, 466, Fifth Circuit, 1995;

 9    and Kitchen versus Canavan, C-a-n-a-v-a-n, 22 F.2d 116, Eighth

10    Circuit, 1927.

11          Now, let's get to the ownership issue, because this

12    was an issue that was raised at the last hearing, Your Honor.

13    And since that hearing was just on whether we were having the

14    hearing today, I figured I would address that now.

15          In admiralty, the term "owner" is to be interpreted,

16    quote, in a liberal way and does not require title ownership.

17    I refer this Court to Dick versus United States, 671 F.2d 724,

18    Second Circuit, 1982.

19          Now, there's a case I'm familiar with, which is the

20    In Re:  Seaboard Spirit.  I do not have the site, Your Honor,

21    but I was involved in the case.  The Court addressed the

22    ownership of a vessel in relation to a limitation of liability

23    act.  The issue in that case was whether a vessel manager was

24    considered an owner for purposes of allowing it to limit its

25    liability.  While the facts in In Re:  Seaboard Spirit do not

1  specifically relate to this Rule D case, the Court did explain
2  that when an owner is being defined in connection to vessel
3  ownership, the term "owner" is to be interpreted in a liberal
4  way and does not require title ownership.
5          Secondly, the ownership of the vessel is not
6  dependent on its registration.  A certificate of documentation
7  is not conclusive evidence of ownership.  A ship's
8  documentation of title --
9          THE COURT:  Can I interrupt just for a second?
10         MS. OTERO VALDES:  Yes.
11         THE COURT:  It sounds like a closing argument rather
12  than an opening statement that you're making.  I mean,
13  you're --
14         MS. OTERO VALDES:  Actually, my closing is going to
15  be very -- I want Your Honor to think of all of these things
16  as you're hearing the testimony, because if I do all of this
17  at the end, actually the end will be very short, Your Honor.
18         THE COURT:  Okay.
19         MS. OTERO VALDES:  I promise.
20         THE COURT:  You're saving me some time then.
21         MS. OTERO VALDES:  Yes, I am.  No, I really am.  I
22  promise.
23         THE COURT:  All right.
24         MS. OTERO VALDES:  Now, ship's documentation, while
25  prima facie evidence of ownership, is not conclusive.  And

1    true ownership of a vessel is not dependent on the registry.

2    It's ordinarily governed by state law.  And this issue's very

3    important, Your Honor.

4         At the E(4)(f) stage, Your Honor, the plaintiff must

5    only claim a superior right to possession of a vessel or other

6    maritime property.  And Mr. McIntosh should be very familiar

7    with this case.  It's the case of George versus A 2005 Donzi

8    Motor Yacht, 2009 U.S. District Court Lexis, 102186,

9    October 22, 2009.  In that case, Mr. McIntosh was representing

10   the plaintiff and making a lot of the same arguments I'm

11   making today, Your Honor.

12        Now, looking beyond bare legal title.  Now, the

13   possession of bare legal title I've gone into; I won't go into

14   anymore.  It's set out in my paper in terms of the cases.

15        One point I do want to make, Your Honor, in terms of

16   the civil forfeiture cases that we cited in our response

17   memorandum.  The defendant claims that those cases are

18   irrelevant for looking at ownership.  However, civil

19   forfeiture cases, Your Honor, derive from the English

20   Navigation Acts.  Using those acts as a model, the U.S.

21   Congress passed the statutes to aid in the collection of

22   customs duties, and the U.S. Supreme Court has specifically

23   held that these cases were closely tied to the practical

24   necessities concerning the admiralty, piracy and customs laws.

25        And I'll refer the Court to The Brig Malek Adhel,

1    A-d-h-e-l, 43 U.S. 2 How. 10, 1844.  That is still good law,

2    Your Honor.

3            Now, Florida law regarding ownership.  The question

4    of ownership, as I stated before, is ordinarily governed by

5    state law.  The Eleventh Circuit has specifically held that a

6    vessel is considered goods under the Florida's UCC.

7            Now, the case of Jones versus One Fifty Foot

8    Gulfstar Motor Sailing Yacht, 625 F.2D 3, Fifth Circuit, 1980.

9    This case is a good case to look at, Your Honor.  It found

10   that the district court has subject matter jurisdiction over a

11   petitory action where plaintiff alleged the immediate right to

12   possession and unlawful taking and detection by defendant.

13   The former Fifth Circuit found the district courts have

14   jurisdiction over such actions, since possessory and tortious

15   conduct alleged involved are derivative of the right of title.

16           And Your Honor will recall that we cited numerous

17   times not only in arguments but in our papers the case of

18   Northern Insurance Company, so I won't belabor.  Under the UCC

19   and Florida law, a buyer of goods acquires all title which his

20   transfer had or has power to transfer.

21           Now, here, the defendants simply do not meet the

22   buyer in the ordinary course of business definition to state

23   they have legal title to this vessel, as they utilize funds

24   that were misappropriated from Palm House.

25           Now, if the Court does not accept the theory for

```
 1    whatever reason that Palm had legal title to the vessel, it

 2    certainly has been deprived possession for a vessel it put a

 3    deposit down and maintained.  It is undisputed that Palm has

 4    been deprived possession of the vessel.  I again refer the

 5    Court to the case of Jones.  This case involves more than a,

 6    quote, simple dispute for construction and delivery of a

 7    vessel, unquote, but, rather, Palm moves for immediate

 8    possession and argues that the vessel was purchased and

 9    maintained with funds from the Palm House.

10            Now, you will recall, Your Honor, we had a count 3

11    for betterment.  It is well settled under the general maritime

12    law of the United States the supply of necessaries to a vessel

13    creates a maritime lien against that vessel, and I won't

14    belabor what's required to show for a maritime lien.  If the

15    Court finds that Palm was not an owner entitled to claim

16    possession over the vessel, the Court should find that it, in

17    fact, provided necessaries to a vessel.

18            Now, necessaries are read rather broadly, and they

19    are construed to include, quote, what is reasonably needed in

20    the ship's business, unquote.  This should include the cash

21    used to pay for these items for the vessel as requested by its

22    alleged owner, Alibi, LTD.  The law is also well established

23    that an admiralty court may use its equitable principles where

24    appropriate to avoid injustice.  Therefore, if the Court does

25    find that our client was entitled to possession, our client is
```

1    not only entitled to possession of the funds for the purchase,

2    but, of course, it would be entitled to funds that were put

3    into the vessel that came from the hotel.

4           Conversion.  This is another point, Your Honor.

5    Conversion of property by a ship or its crew supports a

6    maritime tort lien against the vessel itself.  I cited the

7    case of Thyssen, Inc., versus S.S. Rio Capaya, C-a-p-a-y-a,

8    1988 AMC 1878, Middle District of Florida, 1988.

9           Now, there's been some allegations that Palm House

10   has no standing to bring this lawsuit.  We will present

11   evidence, if the Court deems it necessary, as to this issue of

12   standing.  The question of standing is whether a litigant is

13   entitled to have the Court decide the merits of the dispute of

14   a particular issue.  A party seeking to invoke federal

15   jurisdiction must demonstrate an injury in fact or an invasion

16   of a legally protected interest.  I think everyone agree that

17   if someone misappropriates your money, you're had an injury.

18          Number two, direct causal relationship between the

19   injury and the alleged action, misappropriated funds put into

20   the use and operation of a vessel, and the likelihood of

21   redressability.  That's obviously very likely, as the funds

22   from the sale of the vessel currently rest in the registry of

23   the Court.

24          Defendants argue that intervening plaintiff lacked

25   authority to bring this derivative action, and specifically

1  they state in page 6 of their original motion, quote, if

2  Mr. Black lacks standing to bring a derivative claim, then

3  this Court would lack subject matter jurisdiction.  Well, Your

4  Honor this is incorrect.  While it's correct that a company

5  has exclusive standing to sue for injuries it alone has

6  suffered, the exception exists for a shareholder member who

7  prosecutes the claim to redress injuries of the company, and

8  that's precisely what we allege.

9          Thank you for your time, Your Honor.

10          THE COURT:  All right.  So just -- well, I want to

11 make sure I understand the parties and your -- trying to

12 narrow down the issues if we can.

13          MS. OTERO VALDES:  Sure, Your Honor.

14          THE COURT:  You're saying, as I understand it, that

15 Alibi -- the vessel was purchased by Alibi with

16 misappropriated funds.

17          MS. OTERO VALDES:  Yes.

18          THE COURT:  By Mr. Cowell.

19          MS. OTERO VALDES:  No.

20          THE COURT:  I mean, Mr. Black.

21          MS. OTERO VALDES:  No.

22          THE COURT:  Who?

23          MS. OTERO VALDES:  Mr. Black is a derivative member

24 of Palm House.

25          THE COURT:  Okay.

```
 1                    MS. OTERO VALDES:  Of the hotel.

 2                    THE COURT:  Mr. Matthews took the --

 3                    MS. OTERO VALDES:  Correct, Your Honor.

 4                    THE COURT:  So Mr. Matthews, you're claiming,

 5      misappropriated funds from Palm House.

 6                    MS. OTERO VALDES:  Yes, Your Honor.

 7                    THE COURT:  All right.  And purchased the vessel.

 8      So it's Palm House's money.

 9                    MS. OTERO VALDES:  Yes, Your Honor.

10                    THE COURT:  As far as you're concerned.

11                    MS. OTERO VALDES:  Yes.

12                    THE COURT:  Okay.  And so Mr. Black is bringing the

13      claim on behalf of Palm House?

14                    MS. OTERO VALDES:  Yes, Your Honor.

15                    THE COURT:  And Mr. Handler is representing whom,

16      the bank?  The lender to Palm House?

17                    MS. OTERO VALDES:  The lender that lended the money

18      to Palm House, correct, Your Honor.

19                    THE COURT:  All right.  So there's an issue as to

20      whether Mr. Black has authority to bring a claim on behalf of

21      Palm House.

22                    MS. OTERO VALDES:  That's the allegation of the

23      defense, Your Honor.

24                    THE COURT:  And what is Mr. Black's position in Palm

25      House?
```

```
 1              MS. OTERO VALDES:  He was, at one point, managing

 2    member of Palm House, and then member of Palm House.  It is an

 3    LLC, Your Honor, that had two members that were members of the

 4    LLC.  One was Mr. Matthews' brother, and the other one was

 5    Mr. Black.

 6              THE COURT:  All right.  So I presume there is some

 7    either corporate documents or, what is it, LLC documents that

 8    create the entity that set forth who's got authority to act

 9    for the LLC, and there's some Florida law that says who can

10    bring a derivative claim on behalf of the LLC.

11              MS. OTERO VALDES:  Yes, Your Honor.

12              THE COURT:  So that should be pretty easy to

13    resolve, shouldn't it?

14              MS. OTERO VALDES:  It should, Your Honor.

15              THE COURT:  Okay.  But you tell me he's got

16    authority, and they say he doesn't.

17              MS. OTERO VALDES:  Yes, Your Honor.

18              THE COURT:  Are there any factual issues that need

19    to be resolved in order to determine what his position is and

20    what the law --

21              MS. OTERO VALDES:  I don't believe so, Your Honor.

22              THE COURT:  All right.  All right.  So then -- so

23    because you say that the Palm House funds were misappropriated

24    and used to purchase the vessel and better the vessel,

25    et cetera, Palm House owns the vessel.
```

```
 1              MS. OTERO VALDES:  Yes, Your Honor.

 2              THE COURT:  Okay.  And are there any cases -- you've

 3    went through a lot of cases, and there are no cases that, in

 4    the history of admiralty jurisdiction for going back to

 5    English common law and that deal with a person who stole

 6    money -- and that's your allegation, he stole money from Palm

 7    House -- goes and buys a vessel with the stolen money, and the

 8    victim of the theft is considered to be the owner of the

 9    vessel for purposes of admiralty jurisdiction, there are no

10    cases that in the history of admiralty jurisprudence that have

11    come up with those facts before?

12              MS. OTERO VALDES:  Your Honor, I can safely say that

13    the exact fact pattern we are presented with today I have been

14    unable to find.  Conversely, there is no case that has that

15    same fact pattern that says it is not within admiralty

16    jurisdiction.

17              What we do have is, once again, cases where theft

18    has been involved, and the courts have, in fact, ruled that

19    there is -- you cannot have title -- your title is only good

20    as your right to assert that title.  And if, in fact, the

21    title was obtained via a tort such as theft, that is not good

22    title, Your Honor.  Those cases do exist.

23              THE COURT:  Okay.  So, again, in Florida

24    jurisprudence, there's no real property, vessels, vehicles,

25    jewelry, where someone stole money, purchased an asset with
```

```
 1   the money, and there was an issue of whether or not the victim

 2   was the owner of the property acquired with the stolen funds

 3   versus the thief who is considered the owner of the . . .

 4              MS. OTERO VALDES:  Yes, Your Honor.  There is a case

 5   that's coming to mind, it is a Florida Supreme Court case, I

 6   will pull it, Your Honor, the name escapes me right now, where

 7   the Court does discuss the issue.  However, with the Florida

 8   Supreme Court case, is that the Court obviously does not

 9   discuss admiralty jurisdiction but does get into rights

10   involving when there is a theft of property.  I will pull that

11   case, Your Honor, while the defense is doing their opening,

12   but certainly I think that case will illuminate that a little

13   further for you.

14              THE COURT:  Thank you.

15              MS. OTERO VALDES:  Thank you, Your Honor.

16              MR. VALDES:  Someone's walked into the courtroom.

17   Is that a witness?  We'd love to have witnesses step outside.

18              THE COURT:  And are you an attorney?

19              MR. VALDES:  Yes, sir, I am.

20              THE COURT:  Okay.  Are you counsel of record in this

21   case?  Has anyone invoked the rule so far today?  I didn't

22   hear the rule being invoked, so . . .

23              MS. OTERO VALDES:  No, I don't think that the rule

24   has been invoked.  If I could just have a moment, Your Honor,

25   to speak to Mister . . .
```

```
 1                THE COURT:  Mr. McIntosh?

 2                MR. MATTHEWS:  He is a witness.

 3                THE COURT:  Is someone invoking the rule?  You know,

 4     I still haven't heard the rule being invoked.

 5                MS. OTERO VALDES:  Yes, Your Honor, I'm invoking the

 6     rule.

 7                THE COURT:  You're invoking the rule.

 8                Okay.  All witnesses should remain outside until

 9     called.  Thank you.

10                Mr. McIntosh.

11                MR. McINTOSH:  Good morning, Your Honor.

12                THE COURT:  Good morning.

13                MR. McINTOSH:  As I mentioned, I represent the

14     defendants in this case.  I think the case is, for Your

15     Honor's consideration, much more simple than the pattern of

16     facts laid out by plaintiff's counsel.

17                The issue for your consideration, which is

18     paramount, which is whether or not the allegations made in the

19     complaint by the intervening plaintiffs bring admiralty

20     jurisdiction to their claim.  And I think it's important that

21     plaintiff's counsel started with the statement which I think

22     is paramount, which is the motor yacht was purchased with

23     misappropriated funds.  For the purposes of this hearing,

24     we're not going to argue that.  That's not for this Court's

25     consideration this morning on this show cause hearing whether
```

1   or not the funds were misappropriated or whether the funds

2   were actually given to Alibi with the agreement of Palm House.

3         Palm House was an LLC.  Mr. Black was a one percent

4   owner.  Mr. Matthews' brother owned the other 99 percent.  And

5   obviously there's a dispute between the parties.  There's

6   litigation going on in the Circuit Court in and for Palm Beach

7   County dealing with all those issues, as well as dealing with

8   the issue of the right to possess the funds from the sale of

9   the yacht.

10        I don't have any fact situation to suggest to the

11   Court today in my opening statement.  I think what is going to

12   be proved is that the claim for this yacht arises, as the

13   Court has said, from a part who says my money was stolen, my

14   money was used to buy a yacht and/or used to provide

15   necessaries to the yacht.  Therefore, I'm entitled to

16   ownership of the yacht, or in the alternative, I'm entitled to

17   a maritime lien for the betterment.  Maritime law does not

18   support that, and the cases which we've cited to the Court

19   previously substantiate that.

20        THE COURT:  Can I interrupt for just a second?

21        So for purposes of this hearing, are you saying that

22   I can assume, without deciding that the money was actually

23   misappropriated, and it's really Palm House money that was

24   used to purchase the yacht?

25        MR. McINTOSH:  I believe you can, Your Honor.  I

```
 1   believe you can decide this case without a factual finding
 2   that the money was actually misappropriated.  You can take,
 3   for the show cause hearing, that they -- their claim that it
 4   was misappropriated is correct for the show cause hearing.
 5           THE COURT:  All right.  So that maybe hopefully will
 6   shorten the amount of evidence that needs to be presented.
 7           MR. McINTOSH:  I would hope so.
 8           THE COURT:  Okay.
 9           MR. McINTOSH:  And, Your Honor, I have obviously
10   some argument to make on the law, but I think that would be
11   more appropriate after the Court hears whatever evidence the
12   plaintiff's going to present.
13           THE COURT:  Al right.  So I guess my question is
14   what evidence do we need to present in view of your concession
15   that we should -- I should assume, just for the purposes of
16   this hearing, and not making any final determinations, that
17   the money used to purchase the yacht, as well as the money
18   used to, I guess, maintain the yacht, or improve it, better
19   it, came from funds that -- of the Palm House and were
20   misappropriated, they should -- there was no right to use
21   those funds for those purposes?
22           MR. McINTOSH:  For this hearing we're not going to
23   contest that.  We don't think there's any reason to do that.
24   That issue is for a later day and we believe for a later
25   court.
```

```
 1              THE COURT:  All right.  So, again, is there anything

 2    that the Government -- that the plaintiff needs to present by

 3    way of evidence in order for me to decide the legal issues?

 4              MR. McINTOSH:  I believe you can simply look at the

 5    allegations of the complaint and the law that the Court should

 6    apply to those allegations and make a determination whether or

 7    not you have admiralty jurisdiction.

 8              THE COURT:  All right.  What about the issue of

 9    standing?  Are there any factual disputes regarding

10    Mr. Black's position in Palm House and factual disputes about

11    who has the right to bring a derivative claim on behalf of

12    that entity?  Are there facts that --

13              MR. McINTOSH:  In responding to that, Your Honor,

14    Mr. Black has claimed a derivative claim.  We don't believe

15    he's fulfilled all the requirements to bring that.  But if, in

16    fact, the Court determined that there was no maritime

17    jurisdiction, it would not be necessary to reach that issue.

18              THE COURT:  All right.  But assume I do conclude

19    that there is maritime jurisdiction.  Is that something that

20    should be resolved now or not?

21              MR. McINTOSH:  No, that's not for the Court's

22    consideration.  If the Court determines there's no maritime

23    jurisdiction for the action Mr. Black has brought, then it's

24    not necessary to determine whether or not he had the right to

25    bring the action.
```

```
 1          THE COURT:  But what if I determine he does have --
 2   there is maritime jurisdiction?  When will that issue be
 3   resolved, then?  Down the road?
 4          MR. McINTOSH:  Then if the Court determines there is
 5   maritime jurisdiction, then it would be a question, I think in
 6   the show cause hearing, for counsel to at least present a
 7   preliminary case to show that Mr. Black has the right to bring
 8   the action.
 9          THE COURT:  All right.  And, again, are there any
10   factual disputes about his position in the company, and what
11   his ownership was, and what the documents provide in terms of
12   who has authority to do what for the entity?
13          MR. McINTOSH:  I don't believe there's any factual
14   dispute concerning Mr. Black's ownership of one percent of the
15   company.  I don't believe there's any factual dispute that at
16   one time Mr. Black was managing member, but was removed as
17   managing member prior to this suit being brought.  I don't
18   believe there's any factual dispute about that.
19          They can comment on it later.  That's my
20   understanding.
21          THE COURT:  Okay.  And so with those -- with that
22   understanding, he was a one percent owner, or still is a
23   one percent owner?  Is he still --
24          MR. McINTOSH:  Yes, he still is a one percent owner.
25          THE COURT:  Was at one time the managing member, is
```

```
 1   that the term?
 2           MR. McINTOSH:  He was at one time a managing -- the
 3   managing member.
 4           THE COURT:  And he was -- you're telling me you
 5   believe it's undisputed that he was removed as the managing
 6   member prior to this lawsuit being filed?
 7           MR. McINTOSH:  Yes.
 8           THE COURT:  What about prior to the funds being used
 9   to purchase the vessel and better the vessel?  Was he the
10   managing member during that time or not?
11           MR. McINTOSH:  I'm not sure of that, Your Honor.  I
12   can't answer.
13           THE COURT:  Would that make a difference?
14           MR. McINTOSH:  I can perhaps --
15           THE COURT:  Would that make a difference?
16           MR. McINTOSH:  I don't think so.
17           THE COURT:  Okay.  And -- all right.  And so if
18   those facts are undisputed, you think that I can then make a
19   determination as a matter of law whether he's authorized to
20   bring the derivative claim?
21           MR. McINTOSH:  I believe that counsel would have to
22   present some facts to the Court that would demonstrate that
23   Mr. Black had the right to bring the derivative action.
24   There's certain law that controls whether or not a member of a
25   corporation, especially a minority member, can bring a
```

1    derivative action.  We briefed that in our papers.

2         THE COURT:  Okay.  All right.  So you just want to

3    reserve until after all the evidence is presented and then

4    argue the law, is that what you're suggesting?

5         MR. McINTOSH:  Judge, I'd be glad to argue it now.

6    I can certainly wait.

7         THE COURT:  Well, what evidence do you intend to

8    present, if any, today?

9         MR. McINTOSH:  I have Mr. Matthews here just in case

10   there's some evidence presented in the -- by the plaintiff

11   that I need to rebut.

12        THE COURT:  Okay.

13        MR. McINTOSH:  I don't intend to -- if the plaintiff

14   rested now, I wouldn't offer Mr. Matthews.

15        THE COURT:  Based upon the assumptions that you've

16   asked me to make for purposes of this hearing.  I mean, if

17   they -- since you're conceding, for purposes of this hearing,

18   the money was misappropriated, it was placed into the vessel

19   and used to improve the vessel and to purchase the vessel, I'm

20   not sure what else they need, that --

21        MR. McINTOSH:  For the purposes of this hearing, as

22   Your Honor has suggested, we will not contest the fact that

23   the money was taken from Palm House without Palm House's

24   authority and used to purchase the vessel, as well as some

25   money came from Palm House to pay for work that was done on

1    the boat.

2           Now, it didn't go -- it didn't go directly from Palm

3    House to the yard, Rolly Marine, or to the providers of the

4    equipment, all of it.  It went to different corporations that

5    eventually used the money to buy or pay for work on the boat.

6           THE COURT:  But if the money -- it's traceable from

7    Palm House to these -- the boat and --

8           MR. McINTOSH:  Yes, I think you could trace money

9    from Palm House to IYC, the vendors --

10          THE COURT:  What was the -- IYC, is that what you

11   said?

12          MR. McINTOSH:  Yeah, IYC is . . .

13          MR. MATTHEWS:  International Yacht Charter.

14          MR. McINTOSH:  I'm sorry?

15          MR. MATTHEWS:  International Yacht Charter.

16          MR. McINTOSH:  International Yacht Charter.  Not

17   IYC, the brokerage house, Judge.

18          THE COURT:  All right.  Well, let me find out if we

19   need to have any witnesses now in view of what -- your

20   concessions for purposes of this hearing, and then we'll go

21   from there.  All right?

22          MR. McINTOSH:  Okay.

23          THE COURT:  What evidence do you need to present in

24   view of the assumptions that he's agreed I can make?

25          MS. OTERO VALDES:  Your Honor, with that concession,

1  I've literally asked some witnesses to leave.  We see little

2  point in presenting witnesses at this point, given that major

3  concession.

4          Remember, I referred this Court to a Florida Supreme

5  Court case.  I now have it, Your Honor.  Allen, A-l-l-e-n,

6  versus Hawley, H-a-w-l-e-y, 6 Fla. 142, 1855, with positive

7  references.  And it is directly relevant to this case.

8          THE COURT:  Is there a Southern Reporter cite to

9  that, or was it before Southern Reporter came into existence?

10         MS. OTERO VALDES:  Let me see, Your Honor.  It says

11 6 Fla. 142, Fla., 1855.

12         THE COURT:  I guess they didn't have Southern

13 Reporters back then.

14         MS. OTERO VALDES:  Your Honor, this case

15 specifically says:  As a general rule, merchant vessels

16 employed in navigating the oceans, and we have discovered no

17 exception with respect to steamboat -- oh, must have been a

18 steamboat, Your Honor -- plying in the waters of the interior

19 rivers and lakes are held in tenancy in common."

20         Therefore property in a ship may be acquired by two

21 or more persons, either by building it at their own expense,

22 or by the purchase of a part thereof of a sole owner, of

23 another person, whether by joint building, part purchase or

24 joint purchase in the absence of all positive stipulations to

25 the contrary, because entitled thereto as tenants-in-common.

1        The reason why the Court says this is very

2   important, Your Honor.  As part owner, a vessel, when money is

3   placed within the vessel, there is entitlement to that vessel.

4   A part owner of a ship may, under the facts and circumstances,

5   become partners in regards to proceeds of a ship, and the ship

6   in self (sic), and if they are so regarded, the right to, one,

7   to retain those proceeds until he has paid what he has

8   advanced beyond his proportion is unequitable, unquote, Your

9   Honor.

10          Thank you.

11          THE COURT:  Thank you.

12          Mr. Ricca?

13          MR. RICCA:  Your Honor, I don't want to -- may I

14   approach?

15          THE COURT:  Yes.

16          MR. RICCA:  Your Honor, for the record, Brooks

17   Ricca.  I am co-counsel.  I don't want to speak out of turn,

18   and I'm not sure.  I don't want to rest, but I'm not a hundred

19   percent sure whether we're finishing, because I actually have

20   a couple of questions because of what Mr. McIntosh has said.

21   I'm not really sure where we are evidentiary-wise, then.

22   There is something that I think, based on what I've heard from

23   Mr. McIntosh and Ms. Valdes, that I think is relevant to

24   what's going on today that I don't think has been raised with

25   Your Honor that I think you should be aware of, and it --

```
 1            THE COURT:  Such as?

 2            MR. RICCA:  Well, Judge, just so you know --

 3            MR. McINTOSH:  Your Honor, can I interrupt for a

 4  moment?

 5            MR. RICCA:  Yeah, yeah.

 6            MR. McINTOSH:  We have one counsel for the

 7  plaintiff.  Brooks is co-counsel.

 8            MR. RICCA:  That's correct.

 9            MR. McINTOSH:  It's improper for both lawyers to

10  make argument to the Court.  One lawyer makes the argument.  I

11  object to multiple lawyers arguing positions.

12            THE COURT:  He's trying to -- he's trying to bring

13  up an issue he thinks needs to be covered, so . . .

14            MR. RICCA:  Your Honor, I understand that.  And if

15  you don't mind, I can tell Mr. McIntosh and Ms. Valdes.

16  Because I thought this was coming up in evidence.  I'll tell

17  them.

18            THE COURT:  All right.  Why don't you discuss it

19  with them.

20            MR. RICCA:  I'll tell them.  I think Bob's correct.

21  I'll do that.  Thanks.

22            THE COURT:  All right.

23       (Discussion had off the record.)

24            MR. McINTOSH:  Judge, respectfully, what Mr. Ricca's

25  bringing to my attention is something that doesn't deal with
```

```
 1   the motion before this Court.
 2           THE COURT:  Well, I don't know what it is, so one of
 3   the plaintiff's lawyers can tell me what the issue is, and
 4   I'll decide.
 5           MR. McINTOSH:  It deals with the intervention.
 6           THE COURT:  The intervention by whom?
 7           MR. McINTOSH:  By Mr. Handler.
 8           THE COURT:  We're not dealing with his intervention
 9   today.
10           MS. OTERO VALDES:  Right.  I understand, Your Honor.
11           What Mr. Ricca was attempting to bring to Your
12   Honor's attention was the fact that we had the intervention,
13   and we also have the receiver that is responsible for
14   collecting all the funds for -- from the hotel for the
15   receiver's purpose, and the receiver yesterday had a hearing
16   in front of Judge Hafele, and they've agreed that they're
17   going to have another hearing similar to this.
18           September, I believe you said?  September?  Was it
19   September?
20           MR. RICCA:  Calendar call's August 19th for the
21   calendar that starts August 29th.
22           MS. OTERO VALDES:  And we had asked Mr. McIntosh if
23   he would be -- he would be willing to stipulate to the Court
24   holding off on its ruling one way or the other to give the
25   receiver time to get his powers expanded to include this
```

1   action.

2          In other words, he has filed a motion, Your Honor,

3   to expand his --

4          THE COURT:  What difference does it make if I have a

5   receiver here or not?  I mean, aren't you making all the

6   arguments that are going to be made one way or the other?

7          MS. OTERO VALDES:  Yes, Your Honor, but to allow the

8   receiver to be able to intervene to make sure that he -- he

9   gets that -- those powers expanded to be able to also obtain

10  these funds.  Because ultimately these funds are not going to,

11  in fact, go to Palm House.  They're eventually going to go to

12  this receiver.

13         THE COURT:  All right.  Well, one of two things is

14  going to happen, I guess.  I'm going to either rule the funds

15  stay in the registry, or I'm going to rule the funds should be

16  released from the registry.

17         MS. OTERO VALDES:  And that's the concern of the

18  receiver, Your Honor.

19         THE COURT:  Well, if I rule they go back to the --

20  to Matthews, if that's my ruling, then they go back to

21  Matthews whether the receiver's here or not.

22         MS. OTERO VALDES:  Right.

23         THE COURT:  And if I rule that they stay in the

24  registry, then he's protected.  But the fact that the receiver

25  is in state court trying to get over here, how does that

```
 1   change my decision one way or the other?  I'm going to hear
 2   from the receiver, and the receiver's lawyer's going to come
 3   in and make the same arguments you're making, and then that's
 4   going to change my mind?  I mean, I don't see how it makes a
 5   difference whether the receiver's here or not.  You're making
 6   all the arguments that need to be made, I presume, to --
 7           MS. OTERO VALDES:  Yes, Your Honor, definitely for
 8   purposes of an E(4)(f) hearing, that it is our contention that
 9   this Court indeed has admiralty jurisdiction.
10           THE COURT:  I understand.  And I'm either going to
11   agree with you or I'm not.
12           MS. OTERO VALDES:  Right.
13           THE COURT:  I don't think the fact that the
14   receiver's here's going to make a difference.
15           MR. RICCA:  Judge, just for the record, because I
16   want to clarify.  My concern was the attorneys kept talking
17   about the money going to Black, and I know that the --
18   whatever happens, if Your Honor said whether the money's
19   staying here or was going -- if it's -- it's not going to
20   Black, though.  It would have to go to the receiver, and I
21   just didn't want there to be any confusion about that.  That's
22   all.  That's all I was bringing up.
23           THE COURT:  I'm -- if it stays in the registry, it's
24   staying in the registry.
25           MR. RICCA:  Correct.
```

 1                THE COURT:  If I release it, it goes back to them.

 2                MR. RICCA:  That's correct.  That's correct.

 3                But it's not Black's money, and I --

 4                THE COURT:  Okay.

 5                MR. RICCA:  It was just a mischaracterization, and I

 6      didn't want that to be mischaracterized.  Because there are

 7      proceedings going on in state court, that if we were coming in

 8      here saying, well, it really is Mr. Black's money and Palm

 9      House's money, it really is under the control of the receiver,

10      and I just didn't want there to be confusion.  That's all it

11      was.

12                THE COURT:  Well, for purposes of this hearing --

13                MR. RICCA:  I know, it doesn't matter.

14                THE COURT:  -- it doesn't matter.

15                MR. RICCA:  I agree.

16                THE COURT:  Okay.  All right.  So what evidence does

17      the plaintiff feel it needs or he needs to present in view of

18      the concession by Mr. McIntosh?

19                MS. OTERO VALDES:  Your Honor, given the concession,

20      we see no reason to present evidence.  So I'm sure you're

21      relieved.

22                THE COURT:  Okay.  I don't know if it is going to

23      make a difference or not for purposes of my decision, but this

24      big exhibit book that has been presented to me, do you have

25      any objection to any of these exhibits being considered for

```
 1   purposes of this hearing?

 2           MR. McINTOSH:  Your Honor, I've never seen them

 3   before until I sat down at this table, so I certainly can't

 4   say I have no objection to them.

 5           THE COURT:  All right.  Well, maybe at some point --

 6           MR. McINTOSH:  I mean, do you need them?

 7           THE COURT:  At some point, maybe we can take a

 8   break, and you can look at them and tell me whether you have

 9   any objection to any of them.  I'm not sure it's going to make

10   a difference in view of their concession.  I assume this is

11   all documents to support everything you've conceded.

12           MS. OTERO VALDES:  Yes, a lot of it goes into

13   tracing the money, Your Honor, and the use of the money from

14   Palm House for various purchases, Your Honor.

15           THE COURT:  All right.  So they don't have any

16   additional evidence in view of your concession for purposes of

17   this hearing, Mr. McIntosh, so do you have any evidence?

18           MR. McINTOSH:  No, Your Honor.

19           THE COURT:  So now we're just going to argue the

20   law, I assume.  I'm going to hear -- you already told me your

21   closing's going to be short now, so . . .

22           MS. OTERO VALDES:  I'm done, Your Honor.

23           THE COURT:  Are you finished?  Are you resting now?

24           MS. OTERO VALDES:  Resting, Your Honor.

25           THE COURT:  Let's take a break, and then we'll get
```

```
 1    back together.
 2              MS. OTERO VALDES:  All right, Your Honor.
 3         (A recess was taken from 9:48 a.m. to 10:01 a.m., after
 4    which the following proceedings were had:)
 5              THE COURT:  Please be seated.
 6              All right.  So since we don't have to take any
 7    evidence -- well, what about the exhibits?  Did you have a
 8    chance, Mr. McIntosh, to look at them?
 9              MR. McINTOSH:  Your Honor, Michelle and I have
10    conferred.  She asked me if I would look specifically at three
11    exhibits, 19, 20 and 21, and whether I had any objection to
12    those.  I reviewed them.  I have no objection.  So I believe
13    those are the only three that she'll offer this morning.
14              MS. OTERO VALDES:  Yes, Your Honor.  He's objecting
15    to the remaining because it's a lot of documents.  Twenty and
16    21 specifically go to the standing issue that hasn't been
17    conceded to.  So if Your Honor has a look at those, we think
18    that might be of help.  And the 19 is the power of attorney
19    signed by Mr. Black as managing member, since Your Honor had
20    some questions as to whether he was the managing member.
21              THE COURT:  All right.  So I'll admit 19, 20 and 21
22    without objection.
23         (Plaintiff's Exhibit Nos. 19-21 entered into evidence.)
24              THE COURT:  And so then we're finished with the
25    evidence?
```

```
 1                MS. OTERO VALDES:  Yes, Your Honor.

 2                THE COURT:  Okay.  So did you have anything in

 3      addition to argue to me in summary for purposes of going

 4      forward before I hear from Mr. McIntosh?  You'll get a chance

 5      to respond to him.

 6                MS. OTERO VALDES:  You mean in terms of a closing,

 7      Your Honor?

 8                THE COURT:  Yeah, yeah.

 9                MS. OTERO VALDES:  No, Your Honor.  I mean, it's

10      pretty much set up.

11                You know, there was clearly -- there is now a

12      stipulation to the misappropriation of funds.  Both under

13      Florida law, which clearly states that if someone puts money

14      into a vessel they are entitled to get that back, and we take

15      a look at federal law regarding ownership not being solely

16      legal title is what's been argued, it is our position that we

17      have certainly met the reasonable standard threshold under

18      E(4)(f) to show this Court that it has adequate jurisdiction

19      in this case to go forward.

20                THE COURT:  You were referring to prior briefs that

21      you may have filed.  You didn't file anything recently for

22      purposes of this hearing, did you?

23                MS. OTERO VALDES:  No.

24                THE COURT:  You were referring to earlier

25      submissions that you made?
```

1            MS. OTERO VALDES:  Yes, Your Honor.  For purposes of

2    this hearing, we have the motion on the order to show cause,

3    our response memorandum and their reply memorandum.  Those

4    were the only documents, as far as I'm aware, that were filed.

5    There were no surreplies, there were no additional memorandums

6    filed.

7            THE COURT:  So it's the previously filed --

8            MS. OTERO VALDES:  Yes, Your Honor.

9            THE COURT:  -- documents that we had before the

10   other hearings.

11           MS. OTERO VALDES:  Correct, Your Honor.

12           THE COURT:  Okay.  I just wanted to -- I didn't see

13   anything come in recently, so I wanted to make sure I didn't

14   miss something.

15           MS. OTERO VALDES:  Thank you, Your Honor.

16           THE COURT:  Okay.  All right.  Mr. McIntosh.

17           MR. McINTOSH:  Thank you, Your Honor.

18           Judge, counsel for plaintiff and I disagree when she

19   takes the position that there is no case that demonstrates if

20   money is stolen from a party and used eventually to buy a

21   ship, whether or not the owner of the money that was

22   misappropriated can bring an admiralty action to recover

23   possession of the ship.  We believe that that very issue was

24   decided by the Fifth Circuit Court of Appeals in 2010 in the

25   Gulf Coast Shell versus Newlin case.

```
 1            In that case --

 2            THE COURT:  Could you give me the cite?

 3            MR. McINTOSH:  Yes, sir.  It's 623 F.3d 235, 2010,

 4   or 2011 AMC 421.

 5            In that case, a entrepreneur, Mr. Newlin, came up

 6   with the theory that he wanted to, in Mexico, dredge for

 7   shell, which he could later then sell in the United States to

 8   be used to shell roads, building and construction.  He joined

 9   with two other gentlemen in a sort of a joint venture, sort of

10   an agreement to proceed, and the two other gentlemen came up

11   with money to buy a dredge which would be used in the shelling

12   procedure venture in Mexico.  When they did that, they found

13   that the dredge was, if I understand the case correctly,

14   titled or licensed in Mexico, and therefore it couldn't be

15   sold to the company which was formed by Mr. Newlin's partners,

16   co-venturers, because it was a U.S. company.  So they asked

17   Mr. Newlin to title the dredge in a Mexican company which he

18   formed.

19            So you have a dredge that is purchased by

20   co-venturers with their money, some money came from Newlin, a

21   very small amount, and then because they couldn't put it in a

22   U.S.-titled company, the dredge was then placed in a Mexican

23   company owned by Mr. Newlin.

24            THE COURT:  Can I interrupt for a second?  As I

25   understand the factual situation you're describing, there was
```

```
 1    an agreement by the other co-venturers that this dredge would

 2    go into the other Mexican company.

 3              MR. McINTOSH:  Yes.

 4              THE COURT:  They were all in agreement to do this.

 5              MR. McINTOSH:  Co-venturers bought the dredge to be

 6    used in the shelling venture in Mexico.

 7              THE COURT:  But everyone was in agreement that the

 8    title would go into this Mexican company.

 9              MR. McINTOSH:  And there was an agreement, because

10    title could not be put in the U.S. company that was used --

11    where the money came from to buy it, that it would be put in

12    Mr. Newlin's company in Mexico.

13              THE COURT:  Okay.

14              MR. McINTOSH:  To complicate the fact pattern,

15    Mr. Newlin then put the title to the dredge in a different

16    Mexican company.  The co-venturers then arrested the dredge.

17    They said we provided the money to buy this dredge.  We have a

18    Rule D possessory action.

19              And the Fifth Circuit judge sitting in Texas ruled

20    in their favor.  Said, yes, you have a Rule D action.  And if

21    you remember, I said Mr. Newlin had a small interest in the

22    money that bought the dredge.  So the Texas district court

23    dredge -- by the way, as in our case, in that case the dredge

24    was bonded out.  So they were talking about the money that was

25    in the court sitting instead of the dredge.  So the Texas
```

judge, district court judge, in that case said, all right, I
find that the co-venturers are, in fact, entitled to ownership
of the boat, and I'm going to divide the money in the court
based on the percentage of money each supplied to the dredge,
and he then awarded Mr. Newlin a very small amount and the
co-venturers a large amount.

Mr. Newlin appealed to the Fifth Circuit Court of
Appeals.  The Fifth Circuit Court of Appeals said they had de
novo jurisdiction to review whether or not there was admiralty
jurisdiction below, and they came to the conclusion, and it
was unanimous, that admiralty jurisdiction and possessory suit
by legal owner of vessel, which has been wrongfully deprived
of its possession, doesn't have jurisdiction.

This was an equitable action.  The co-venturer said
the money was criminally taken from them.  In other words, the
vessel was criminally taken.  So this Court decision in the
Fifth Circuit stands for the position that a party whose money
is wrongfully used to purchase a boat, when they bring an
action to recover the boat in admiralty, they don't have
admiralty jurisdiction, and the court decision starts out with
the phrase which I think -- and by the way, the dredge was
named the La Concha.  It says:  Who has the best claim to La
Concha?  Well, we do not know the answer, but we do know that
the answer cannot be provided by the courts in admiralty.

And so this case stands for the proposition that, as

1    plaintiffs in this case allege, the boat was purchased with

2    misappropriated funds, which is the same thing they're saying

3    in La Concha.  They don't have a maritime claim.  This Court

4    has no admiralty jurisdiction.

5           The Rule C action, which they claim for betterment

6    for paying for services, falls in the same category.  The

7    money may have originally come from Palm House to IYC, or to

8    Palm House PB -- there are other companies -- and may have

9    eventually been used to pay suppliers or workmen on

10   renovations to the vessel.  That does not give them a maritime

11   lien.  None of the vendors assign their lien rights to Palm

12   House.

13          You can't, if you have an interest in the vessel and

14   money is used to pay for the improvements, automatically buck

15   yourself up to having lien rights.  The law doesn't allow

16   that.  Lien rights have to be given with the full

17   understanding that I'm paying for this lien, and I'm obtaining

18   your lien rights.

19          There's some other issues.  The work has to be done

20   at the request of the captain or the owner.  We don't have

21   that issue here.

22          What we have is whether or not the money from the

23   bank account which Palm House claims was misappropriated and

24   later found its way through various entities to paying for

25   services to the boat, whether or not that entitles Palm House

```
 1    to a Rule C maritime lien.  I would suggest to you that it

 2    doesn't, and there's no support for that in the cases cited by

 3    counsel.

 4           We have -- and I think the Court asked this, and I

 5    apologize.  Sometimes my hearing is not the best.  We have not

 6    been able to find any cases dealing with the issues in this

 7    case that are not included in the original briefing for the

 8    show cause hearing back in June or May.  May or June, I forget

 9    when it was.

10           MS. OTERO VALDES:  I don't remember.

11           MR. McINTOSH:  So the case law that we have supplied

12    to the Court we believe is the current case law on these

13    issues.

14           THE COURT:  All right.

15           MR. McINTOSH:  So, Your Honor, that's really my

16    argument.  There's no maritime jurisdiction.

17           THE COURT:  All right.  And the only case you're

18    aware of that you think deals with this kind of a factual

19    scenario is this Fifth Circuit case.

20           MR. McINTOSH:  Judge, it's the case that's right on

21    point, and I've not been able to find any other decision that

22    deals directly with this case.

23           THE COURT:  Did the Fifth Circuit rely on any other

24    similar cases, or this is an issue of first impression as far

25    as the Fifth Circuit was aware?
```

```
 1              MR. McINTOSH:  No.  I mean, the La Concha case cites

 2    other case law for the position that you must have a legal

 3    title to bring a possessory action.  You must have legal title

 4    or legal claim.  And there's plenty of cases that say that.

 5    That's not an issue.  That's not in dispute.  Plaintiffs

 6    concede that.

 7              But it also states that you can't have a maritime

 8    lien for possessory right, a Rule D action, based on equity.

 9    In other words, the theory that, wait a second, you

10    misappropriated funds which are supposed to go for the hotel

11    and used them to pay for the yacht, even though the yacht may

12    later be used by the hotel for charter, I mean, they say you

13    can't do that.  That's not right.

14              All right.  That issue's now being tried in state

15    court, but it doesn't give them a right to a maritime lien or

16    a Rule D action.

17              THE COURT:  All right.  So it's -- as far as you're

18    concerned, it's pretty straightforward.

19              MR. McINTOSH:  Yes, sir.

20              THE COURT:  Okay.  Counsel, what do you say about

21    this Fifth Circuit case?  Are you familiar with it?

22              MS. OTERO VALDES:  Your Honor, what I have to say

23    about the Fifth Circuit case is that, as Your Honor pointed

24    out, there was a joint venture.  There's no joint venture

25    alleged here.  And, in fact, Mr. McIntosh hasn't made any show
```

```
 1    of joint venture, which is his burden, since he's the one

 2    alleging it.

 3              And the case law is very clear that joint venture,

 4    what you do is you look to Florida law.  So you have to show

 5    the legal relationship similar -- when two or more persons

 6    combine their property or time.  I don't think there's any

 7    allegation here that we got all together to combine our

 8    interests to create a joint venture for the operation of this

 9    vessel.  There wasn't a community of interest in the

10    performance of the common purpose, no joint control or right

11    of control.  None of these issues are before the Court.

12              THE COURT:  Is that what the Fifth Circuit was

13    basing it on, the fact that there was --

14              MS. OTERO VALDES:  Well, the problem with the Fifth

15    Circuit case, and with all due respect to opposing counsel --

16              THE COURT:  Did the Fifth Circuit decision turn on

17    the fact that they were all joint venturers?

18              MS. OTERO VALDES:  Yes, Your Honor.  It was a joint

19    venture case.

20              I mean, the holding is such that the Court looked at

21    petitory actions specifically stated in terms of possession, a

22    party seeking possession of a vessel under Rule D must have

23    legal title or a legal claim to possession, and that court

24    cited a case from Ohio.  But I admit that that's the case law.

25    It's either legal title or a legal claim to possession, which
```

```
 1    means something other than legal title to that.  The Court

 2    felt that there was no legal claim to possession because the

 3    parties had all agreed.

 4            I can't recall the name of the case offhand, Your

 5    Honor, but it is within the defendant's papers.  It has to do

 6    with a plaintiff that, as a result of fraud, had turned over

 7    title to the vessel and another individual.  And the Court

 8    felt, well, wait a minute, but that was an action you did.

 9    All the cases talk about when there's an action from a

10    separate source.  In other words, nothing created by the

11    plaintiff themselves to put them in that predicament.  A joint

12    venture would have put them in that predicament.

13            A case involving a plaintiff that handed over title

14    to their vessel via fraud or otherwise, that is something that

15    the plaintiff did.  All the cases, if you look at, Your Honor,

16    talk about an extrinsic source is the word that is used over

17    and over in the cases for a reason.

18            THE COURT:  So you're saying there's case law that

19    says if I'm defrauded into giving title to my vessel to you,

20    and you -- and it's based upon fraud, and I want to get the

21    vessel back, that's not a maritime claim?

22            MS. OTERO VALDES:  Yeah, there's one specific very

23    old case.

24            But, Your Honor, what I'd like to do is turn you --

25            THE COURT:  But what's the difference between you
```

```
 1   defrauding me to the title to the vessel or --
 2           MS. OTERO VALDES:  Because that was an action on the
 3   part of the plaintiff.  There is no action -- there's
 4   misappropriation that wasn't undertaken on the part of the
 5   plaintiff.
 6           THE COURT:  But what's the difference between you
 7   defrauding me of the title by making a misrepresentation to me
 8   of a material fact that causes me to turn the title over to
 9   you, and just taking the money from my bank account?  I mean,
10   what --
11           MS. OTERO VALDES:  Because in that --
12           THE COURT:  Why would one give me a maritime lien
13   but not the other?
14           MS. OTERO VALDES:  I'm following your thought
15   process, Your Honor.
16           Because in that specific case they didn't bring the
17   action under Rule D.  What happened in that specific case is
18   what they argued is that there was a maritime contract, and
19   the contract in that case was for the purchase of a vessel,
20   which I admit to this Court is not under admiralty
21   jurisdiction.  That's not what we have here, Your Honor.  We
22   don't have a situation where this was just about the purchase
23   of a vessel.  This was about the operation of the vessel,
24   which is a maritime contract.
25           Let me clarify, Your Honor.  We've got cases that
```

1    specifically state that when we're talking about operation of

2    a vessel, that is -- and there's a dispute with respect to

3    that vessel, other than mere purchase of the vessel -- that

4    was the Jones case I cited to you before -- that comes within

5    admiralty.

6            I'd like to refer this Court to --

7            THE COURT:  I'm sorry.

8            MS. OTERO VALDES:  That's all right, Your Honor.  As

9    many times as you need.

10           THE COURT:  I don't understand your statement about

11   operation of the vessel.  Are you saying this is a case where

12   we're dealing with operation of the vessel, or it's not a case

13   where we're dealing with operation of the vessel?

14           MS. OTERO VALDES:  Yes, Your Honor.  This is a case

15   where not only did he use the funds to actually purchase the

16   vessel --

17           The Jones case, Your Honor, you need to read, so

18   that you understand what I'm talking about.  Jones makes very

19   clear that when you're talking about the cases that talk about

20   not being in maritime when it's a contract, it all has to do

21   with the actual purchase.  In other words, between buyer and

22   seller.  That's not the situation we have here, Your Honor.

23   We don't have a buyer-seller scenario to which those cases

24   would even apply.  And so the one case that you -- that I had

25   brought to your attention that was cited by the defense, that

```
 1    had to do with a purchase and sale.  It is because it was a
 2    purchase and sale contract why it wasn't in admiralty, because
 3    the U.S. Supreme Court has said so.  The purchase and sale
 4    agreement between two parties is not in maritime.
 5           However, Jones talks about something more, and Jones
 6    says that when it goes -- when it's not a buyer-purchaser
 7    scenario, you have a situation where, yes, admiralty
 8    jurisdiction applies, because now it is a dispute that goes
 9    beyond just purchase and sale.  It's a dispute that has to do
10    with the vessel itself.
11           Have any more questions before I move on?
12           THE COURT:  I'm just trying to understand what you
13    meant by operation of the vessel.
14           MS. OTERO VALDES:  Right.
15           Operation of the vessel means that he purchased the
16    vessel with Palm House funds and continued to operate the
17    vessel with Palm House funds.
18           THE COURT:  But I thought that's the basis for your
19    betterment claim, that he took funds to better the --
20           MS. OTERO VALDES:  Correct, Your Honor.  Correct,
21    Your Honor.
22           Our betterment claim not only falls, we claim, under
23    the Rule D action, but if, for whatever reason, Your Honor
24    feels that, mmm, I don't know about this whole possessory
25    thing, our claim is that because the funds were used to
```

1  actually continue not only the operation of the vessel, but to

2  add things like they painted the vessel, they added a new deck

3  to the vessel, there were some electronics put on the vessel,

4  those kinds of things, those items would give Palm House, who

5  were the people that actually funded the money for those

6  betterments to the vessel, a right to claim a maritime lien

7  against the vessel.

8            THE COURT:  Could I ask you a question about the

9  betterment claims?

10            MS. OTERO VALDES:  Yes.

11            THE COURT:  I presume betterment claims are usually

12  asserted by the laborers who -- or the entity that actually

13  makes the improvements to the vessel?

14            MS. OTERO VALDES:  No, Your Honor.  No, Your Honor.

15            I will refer you to the Northern Insurance case that

16  we've talked about, we talked a lot about at the last hearing.

17  And do I need to give you the cite?  It's in the documents.

18  But Northern insurance.  Let me explain that case.  That court

19  says:  Betterment is defined as an, quote, improvement put

20  upon a property which enhances its value, unquote.

21            Now, in that situation, facts were a little

22  different, but there was a fraud involved.  In that case, you

23  had an individual who was a bona fide purchaser, or he

24  thought, of a vessel.  The problem was the gentleman that he

25  purchased the vessel from, wasn't his vessel, and had -- and

1   they didn't find this out for a while.  They didn't find this

2   out for probably about a year.  When they eventually found

3   this out, they had made a claim with their insurers for

4   Northern Insurance Company, and Northern Insurance Company

5   paid the bona fide purchaser's claim and then sought

6   subrogation against the defrauder.

7            The Court found that the Court, in fact, had subject

8   matter jurisdiction, because you only have title subject to

9   whether it's bona fide title.  This whole argument that I made

10  to you as a good-faith purchaser, it was our argument that

11  Matthews ultimately wasn't a good-faith purchaser because he

12  was using other people's money to purchase this vessel.

13  That -- in that case, what happened was the bona fide

14  purchaser that had the vessel for over a year had put all

15  kinds of stuff into the vessel, had made all kinds of

16  improvements to the vessel.  They physically didn't make those

17  improvements.  They had other people come in and make those

18  improvements.

19           And the Court said specifically that, yes, you have

20  a right to get that money back.  So if, in fact, Northern

21  Insurance was entitled to the million dollars that they paid

22  out, it was less whatever was put in for betterment on the

23  part of the bona fide purchaser, because the bona fide

24  purchaser didn't actually know that this fraud had gone on,

25  and he had improved the vessel and increased the value of the

```
 1   vessel.

 2            So, no, it's not a situation where it's just a

 3   worker that comes onboard and claims a betterment.  That's a

 4   maritime lien.  That is a maritime lien under the maritime

 5   lien statute, Your Honor.

 6            Betterment, if -- is more of I admit that this Court

 7   does not have admiralty jurisdiction alone, standing alone in

 8   equity.  However, once the Court has admiralty jurisdiction,

 9   this Court does operate in equity.  And that's why we're

10   saying that if this Court finds that we're entitled to

11   possession under Rule D, we are also entitled to, under the

12   Court's equity powers, to reimburse Palm for all the work that

13   was done to the vessel throughout the time that Mr. Matthews

14   or Alibi, LTD, had the vessel.

15            THE COURT:  Well, if I find that there's

16   jurisdiction under Rule D, then I don't need to worry about

17   the betterment.

18            MS. OTERO VALDES:  Then you would have

19   jurisdiction -- we're also claiming, Your Honor, though, that

20   because money was put into the vessel, we're entitled to a

21   maritime lien under the maritime lien statute, because our

22   money was put into the vessel for those better -- for those

23   improvements.

24            THE COURT:  So that's over and above the money that

25   was used to purchase.
```

1          MS. OTERO VALDES:  Correct, Your Honor.

2          THE COURT:  Okay.  I'm sorry, I interrupted you.

3          MS. OTERO VALDES:  That's all right, Your Honor.

4          THE COURT:  Go ahead.

5          MS. OTERO VALDES:  And another case that I would

6   like to bring to your Court's attention is the case of

7   Santiago versus Evans.  This is a Middle District of Florida

8   case at 2012 U.S. District Lexis 109644, Middle District of

9   Florida, 2012.  That case also analyzed Jones, since I've

10  talked about Jones so much, so it might actually help you in

11  deciding this case, Your Honor.

12         And the Court -- this was another fraud case similar

13  to the Northern Insurance case, and the Court found that it

14  had subject matter jurisdiction over a possession claim very

15  similar to what we're alleging here, Your Honor, because

16  Admiralty Rule D provides admiralty jurisdiction for, quote,

17  all actions for possession, partition and to try title

18  maintainable according to the course of the admiralty practice

19  with respect to a vessel, period, unquote.

20         The Court goes on and explains that because there

21  was a claim by the plaintiff under Rule D for a legal claim to

22  possession, that was all that was required.

23         And with that, Your Honor, I --

24         THE COURT:  What was the basis of the legal claim

25  for possession in that case?

```
 1              MS. OTERO VALDES:  The legal claim for the

 2   possession was very similar to the claim in Northern Insurance

 3   Company, where there was a purchaser that came in, and it was

 4   a bona fide purchaser that purchased the vessel.

 5              And, of course, the argument of the other side was,

 6   well, this was a purchase and sale.  And the Court said, no,

 7   no, no, wait a minute.  When we're talking fraud and we're

 8   talking about someone that's claiming possession because he

 9   was defrauded, that is precisely what Rule D is set out to do,

10   is to be able to try title in those situations where someone

11   was defrauded.

12              So I urge the Court to have a look at that case.

13              The Court -- I'm trying to see.  Let's see.  The

14   only -- the Court talked about Newlin a little bit, and the

15   Court distinguished Newlin by saying that it was undisputed

16   that the person that was -- that was deprived of the vessel

17   and was claiming under the Rule D had been deprived of

18   possession.

19              In Newlin, the joint venturer that was involved in

20   Newlin was not deprived of possession.  At all times, that's

21   the allegation herein, is that Palm House has been deprived of

22   possession, and, in fact, didn't even realize that funds had

23   been used and taken from Palm House while the vessel was in

24   operation.  And up until now, there has been no effort on the

25   part of Alibi, LTD or the Matthewses to allow, and, of course,
```

```
 1   today they're fighting 'til today that we're entitled to
 2   possession of those funds.
 3            THE COURT:  Anything else?
 4            MS. OTERO VALDES:  That's it, Your Honor.  Thank you
 5   very much.
 6            THE COURT:  Thank you.
 7            Anything else, Mr. McIntosh?
 8            MR. McINTOSH:  Judge, nothing that we really haven't
 9   brought forward before.  I mean, I can get up and make
10   comments.  I don't think it's proper to come in with a
11   surrebuttal.  I just ask the Court to read carefully the Gulf
12   Coast-Newlin case --
13            THE COURT:  Okay.
14            MR. McINTOSH:  -- and the cases both of us have
15   cited in the memorandum.
16            Thank you.
17            THE COURT:  All right.  Well, thank you for
18   streamlining the proceedings.  Didn't have to go through all
19   of these documents.
20            MR. McINTOSH:  I'm sorry.  I do have one question,
21   Judge.
22            If the Court decides there's no right under their
23   claim for possession of the yacht but it's considering the
24   betterment or Rule C claim, we need to know how much that is
25   for bonding purposes.  I don't believe they've ever given us
```

```
 1   the number.

 2           MS. OTERO VALDES:  So are you asking us to present

 3   the rest of these exhibits?

 4           MR. McINTOSH:  No, I just asked the Court to give a

 5   number, if you've given one, what your claim is.

 6           MS. OTERO VALDES:  We can do that.  We can do that

 7   subsequent to this, I would think.

 8           MR. McINTOSH:  I'll accept their representation,

 9   Judge.  I don't -- you know, what they're claiming.

10           THE COURT:  Well, why don't you see if you can agree

11   or come to a number that you're claiming for betterments, if

12   that's going to be the basis upon which there's a -- money

13   remaining in the registry, and --

14           MS. OTERO VALDES:  Well, Your Honor --

15           Okay.  Well, are you going to stipulate to the

16   number we give you?  I mean, are we going to have to present

17   evidence to that effect?  I think that's the issue.

18           THE COURT:  I understood he just wanted to know what

19   the amount was that you're claiming.

20           MR. McINTOSH:  I just want to know what the amount

21   you're claiming is.

22           MS. OTERO VALDES:  Okay.

23           MR. McINTOSH:  I'm not stipulating you're entitled

24   to it.

25           MS. OTERO VALDES:  All right.  Well --
```

```
 1              THE COURT:  That would be the outside number that
 2    would remain in the registry, and I guess there could be some
 3    further litigation about whether it's a valid number or not,
 4    but . . .
 5              MS. OTERO VALDES:  Well, it would be our position,
 6    Your Honor, that it would be the difference between the
 7    purchase price and the sale price, Your Honor, of the vessel.
 8              THE COURT:  Okay.  Well, I don't know what that is.
 9              MS. OTERO VALDES:  Well, he'll know.
10              THE COURT:  I thought -- I thought the betterment
11    claim was based upon the monies that were used to improve the
12    vessel.
13              MR. McINTOSH:  It is.
14              THE COURT:  So I don't know.
15              MS. OTERO VALDES:  Well, it's a betterment claim,
16    Your Honor.  Betterment is based on~-- also based on market
17    value, Your Honor.
18              THE COURT:  All right.  Well, see if you can come up
19    with a number, a specific number, in case that becomes
20    relevant.
21              MS. OTERO VALDES:  All right, Your Honor.  Thank
22    you.
23              THE COURT:  Okay.  Anything else?
24              MR. McINTOSH:  No, Your Honor.  Thank you, Judge.
25              THE COURT:  Thank you all for coming in this
```

1   morning.  And it's always interesting.  This case has been a

2   very interesting case.

3           All right.  Have a good afternoon.

4           MS. OTERO VALDES:  Thank you, Your Honor.  Likewise.

5       (Proceedings concluded.)

6                       *  *  *  *  *

7                       CERTIFICATE

8       I, Stephen W. Franklin, Registered Merit Reporter, and

9   Certified Realtime Reporter, certify that the foregoing is a

10  correct transcript from the record of proceedings in the

11  above-entitled matter.

12      Dated this 23rd day of JULY, 2016.

13

14      /s/Stephen W. Franklin
        _____
15      Stephen W. Franklin, RMR, CRR

16

17

18

19

20

21

22

23

24

25

**MR. HANDLER: [2]** 3/17 4/1

**MR. MATTHEWS: [3]** 21/1 28/12 28/14

**MR. McINTOSH: [58]** 4/3 21/10 21/12 22/24 23/6 23/8 23/21 24/3 24/12 24/20 25/3 25/12 25/23 26/1 26/6 26/10 26/13 26/15 26/20 27/4 27/8 27/12 27/20 28/7 28/11 28/13 28/15 28/21 31/2 31/5 31/8 31/23 32/4 32/6 36/1 36/5 36/17 37/8 39/16 40/2 41/2 41/4 41/8 41/13 44/10 44/14 44/19 44/25 45/18 56/7 56/13 56/19 57/3 57/7 57/19 57/22 58/12 58/23

**MR. RICCA: [15]** 3/14 30/12 30/15 31/1 31/4 31/7 31/13 31/19 32/19 34/14 34/24 35/1 35/4 35/12 35/14

**MR. VALDES: [2]** 20/15 20/18

**MS. OTERO VALDES: [93]**

**THE COURT: [151]**

**$**

**$5.75 [1]** 5/25
**$5.75 million [1]** 5/25
**$500,000 [2]** 6/4 6/9

**'**

**'til [1]** 56/1

**-**

**-and [3]** 2/4 2/7 2/10
**-v [1]** 1/5

**/**

**/s/Stephen [1]** 59/14

**1**

**1.5 million [1]** 6/6
**10 [1]** 13/1
**10 million [1]** 6/2
**102186 [1]** 12/8
**109644 [2]** 8/20 54/8
**10:01 [1]** 37/3
**116 [1]** 10/9
**117 [2]** 2/3 2/6
**142 [2]** 29/6 29/11
**15-81606-CIV-KAM [1]** 1/2
**150 [1]** 6/4
**151 [1]** 5/21
**160 [1]** 5/3
**1615 [1]** 2/9
**1844 [1]** 13/1
**1855 [2]** 29/6 29/11
**1878 [1]** 15/8

**18th [1]** 5/22
**19 [3]** 37/11 37/18 37/21
**19-21 [1]** 37/23
**1927 [1]** 10/10
**1980 [1]** 13/8
**1982 [1]** 10/18
**1988 [2]** 15/8 15/8
**1995 [1]** 10/8
**19th [1]** 32/20

**2**

**20 [2]** 37/11 37/21
**200 [1]** 2/9
**2005 [1]** 12/7
**2009 [2]** 12/8 12/9
**2010 [2]** 39/24 40/3
**2011 [1]** 40/4
**2012 [4]** 8/20 8/21 54/8 54/9
**2013 [1]** 5/9
**2014 [1]** 5/22
**2016 [2]** 1/8 59/12
**2030 [2]** 2/3 2/6
**21 [5]** 8/21 37/11 37/16 37/21 37/23
**218-A [1]** 2/12
**22 [3]** 1/8 10/9 12/9
**2255 [1]** 2/12
**235 [1]** 40/3
**23rd [1]** 59/12
**29th [1]** 32/21

**3**

**30th [1]** 5/8
**33134 [2]** 2/4 2/7
**33335 [1]** 2/16
**33401 [2]** 1/18 2/10
**33431 [1]** 2/13
**3768 [1]** 1/17
**3rd [1]** 2/15

**4**

**421 [1]** 40/4
**43 [1]** 13/1
**46.12-meter [1]** 5/19
**466 [1]** 10/8

**5**

**500 [1]** 2/15
**500,000 [1]** 6/7
**514-3768 [1]** 1/17
**561 [1]** 1/17

**6**

**623 [1]** 40/3
**625 [1]** 13/8
**671 [1]** 10/17

**7**

**701 [1]** 1/18
**72 [1]** 10/8
**724 [1]** 10/17

**8**

**888 [1]** 2/15

**9**

**99 percent [1]** 22/4
**9:48 [1]** 37/3

**A**

**A-d-h-e-l [1]** 13/1
**A-l-l-e-n [1]** 29/5
**a.m [2]** 37/3 37/3
**able [6]** 7/25 33/8 33/9 44/6 44/21 55/10
**above [2]** 53/24 59/11
**above-entitled [1]** 59/11
**absence [1]** 29/24
**accept [2]** 13/25 57/8
**according [3]** 5/24 7/15 54/18
**account [4]** 9/12 9/14 43/23 48/9
**accounting [1]** 6/5
**acquired [2]** 20/2 29/20
**acquires [1]** 13/19
**act [2]** 10/23 18/8
**action [28]** 5/5 7/12 8/9 8/16 13/11 15/19 15/25 24/23 24/25 25/8 26/23 27/1 33/1 39/22 41/18 41/20 42/14 42/19 43/5 45/3 45/8 45/16 47/8 47/9 48/2 48/3 48/17 50/23
**actions [9]** 7/11 7/14 7/16 7/18 8/14 8/14 13/14 46/21 54/17
**acts [2]** 12/20 12/20
**actual [4]** 9/1 10/1 10/3 49/21
**actually [12]** 11/14 11/17 22/2 22/22 23/2 30/19 49/15 51/1 51/5 51/12 52/24 54/10
**add [2]** 6/7 51/2
**added [1]** 51/2
**addition [1]** 38/3
**additional [2]** 36/16 39/5
**address [1]** 10/14
**addressed [1]** 10/21
**adequate [1]** 38/18
**Adhel [1]** 12/25
**admiralty [32]** 7/6 7/15 9/3 9/8 9/21 10/15 12/24 14/23 19/4 19/9 19/10 19/15 20/9 21/19 24/7 34/9 39/22 42/9 42/11 42/19 42/20 42/24 43/4 48/20 49/5 50/2 50/7 53/7 53/8 54/16 54/16 54/18
**admit [4]** 37/21 46/24 48/20 53/6
**advanced [1]** 30/8
**affirmative [1]** 10/5
**after [3]** 23/11 27/3 37/3
**afternoon [1]** 59/3
**again [6]** 8/3 14/4 19/17 19/23 24/1 25/9

**against [6]** 7/19 8/5 14/13 15/6 51/7 52/6
**agree [4]** 15/16 34/11 35/15 57/10
**agreed [3]** 28/24 32/16 47/3
**agreement [2]** 6/2 22/2 40/10 41/1 41/4 41/7 41/9 50/4
**ahead [1]** 54/4
**aid [1]** 12/21
**al [3]** 1/6 3/4 23/13
**ALIBI [17]** 1/6 3/4 5/18 5/19 5/23 5/24 6/2 6/3 9/9 9/10 9/19 14/22 16/15 16/15 22/2 53/14 55/25
**allegation [4]** 17/22 19/6 46/7 55/21
**allegations [4]** 15/9 21/18 24/5 24/6
**allege [3]** 9/3 16/8 43/1
**alleged [5]** 13/11 13/15 14/22 15/19 45/25
**alleging [4]** 46/2 54/15
**Allen [1]** 29/5
**allow [3]** 33/7 43/15 55/25
**allowing [1]** 10/24
**alone [3]** 16/5 53/7 53/7
**already [1]** 36/20
**also [9]** 4/13 14/22 32/13 33/9 45/7 53/11 53/19 54/9 58/16
**alternative [1]** 22/16
**always [2]** 7/10 59/1
**am [4]** 11/21 11/21 20/19 30/17
**AMC [2]** 15/8 40/4
**amount [6]** 23/6 40/21 42/5 42/6 57/19 57/20
**analyzed [1]** 54/9
**and/or [1]** 22/14
**another [8]** 6/4 6/8 15/4 29/23 32/17 47/7 54/5 54/12
**answer [3]** 26/12 42/23 42/24
**any [32]** 7/2 7/20 8/6 8/12 9/17 18/18 19/2 19/22 20/13 26/23 24/9 25/9 25/13 25/15 25/18 27/8 28/19 34/21 35/25 35/25 36/9 36/9 36/15 36/17 37/6 37/11 44/6 44/21 44/23 45/25 46/6 50/11
**anymore [1]** 12/14
**anyone [1]** 20/21
**anything [7]** 24/1 38/2 38/21 39/13 56/3 56/7 58/23
**aol.com [1]** 1/19
**apologize [1]** 44/5
**appealed [1]** 42/7
**Appeals [3]** 39/24 42/8

42/8
**appearances [3]** 1/14 2/1 3/5
**applies [1]** 50/8
**apply [2]** 24/6 49/24
**appointed [1]** 3/22
**approach [2]** 10/14
**appropriate [4]** 3/23 10/6 14/24 23/11
**aren't [1]** 13/5
**argue [6]** 15/24 21/24 27/4 27/5 36/19 38/3
**argued [2]** 38/16 48/18
**argues [1]** 14/8
**arguing [1]** 31/11
**argument [10]** 8/24 10/5 11/11 23/10 31/10 31/10 44/16 52/9 52/10 55/5
**arguments [5]** 12/10 13/17 33/6 34/3 34/6
**arises [1]** 22/12
**arrest [2]** 6/22 8/18
**arrested [1]** 41/16
**ask [3]** 7/1 51/8 56/11
**asked [8]** 4/2 27/16 29/1 32/22 37/10 40/16 44/4 57/4
**asking [1]** 57/2
**assert [2]** 9/22 19/20
**asserted [2]** 9/19 51/12
**asserting [1]** 9/21
**asserts [1]** 9/23
**asset [1]** 19/25
**assign [1]** 43/11
**assigned [1]** 5/8
**assisting [1]** 3/11
**Assoc [1]** 2/8
**Associates [1]** 9/13
**assume [5]** 22/22 23/15 24/18 36/10 36/20
**assumptions [2]** 27/15 28/24
**attempting [1]** 32/11
**attention [4]** 31/25 32/12 49/25 54/6
**attorney [2]** 20/18 37/18
**attorneys [9]** 9/13 34/16
**August [3]** 5/8 32/20 32/21
**August 19th [1]** 32/20
**August 29th [1]** 32/21
**August 30th [1]** 5/8
**authority [6]** 15/25 17/20 18/8 18/16 25/12 27/24
**authorized [1]** 26/19
**automatically [1]** 43/14
**Avenue [1]** 2/15
**avoid [1]** 14/24
**awarded [1]** 42/5
**aware [4]** 30/25 39/4 44/18 44/25

**B**

**back [10]** 19/4 29/13 33/19 33/20 35/1 37/1

**B**

back... [4] 38/14 44/8 47/21 52/20
bank [3] 17/16 43/23 48/9
bare [2] 12/12 12/13
Barristers [1] 2/9
based [8] 27/15 30/22 42/4 45/8 47/20 58/11 58/16 58/16
bases [1] 8/8
basing [1] 46/13
basis [4] 9/21 50/18 54/24 57/12
Beach [5] 1/7 1/18 2/10 9/13 22/6
because [31] 8/22 10/11 11/16 18/23 29/25 30/19 30/20 31/16 33/10 34/15 35/6 37/15 40/16 40/21 41/9 47/2 48/2 48/11 48/16 50/1 50/2 50/8 50/25 52/8 52/11 52/23 53/20 53/21 54/15 54/20 55/8
become [1] 30/5
becomes [1] 58/19
before [13] 1/11 7/7 13/4 19/11 29/9 32/1 36/3 38/4 39/9 46/11 49/4 50/11 56/9
began [1] 5/16
begin [2] 4/12 4/13
behalf [7] 3/6 3/7 3/19 17/13 17/20 18/10 24/11
behavior [1] 5/16
being [10] 11/2 20/22 21/4 25/17 26/6 26/8 35/25 38/15 45/14 49/20
belabor [2] 13/18 14/14
believe [16] 18/21 22/25 23/1 23/24 24/4 24/14 25/13 25/15 25/18 26/5 26/21 32/18 37/12 39/23 44/12 56/25
belonging [1] 9/16
below [1] 42/10
best [2] 42/22 44/5
better [5] 18/24 23/18 26/9 50/19 53/22
betterment [17] 7/13 14/11 22/17 43/5 50/19 50/22 51/9 51/11 51/19 52/22 53/3 53/6 53/17 56/24 58/10 58/15 58/16
betterments [2] 51/6 57/11
between [8] 6/20 15/18 22/5 47/25 48/6 49/21 50/4 58/6
beyond [3] 12/12 30/8 50/9
big [1] 35/24
bit [1] 55/14
Black [19] 3/7 3/10 5/1 8/24 16/2 16/20 16/23

17/12 17/20 18/5 22/3 24/14 24/23 25/7 25/16 26/23 34/17 34/20 37/19
Black's [5] 17/24 24/10 25/14 35/3 35/8
boat [8] 28/1 28/5 28/7 42/3 42/18 42/19 43/1 43/25
Bob [1] 4/5
Bob's [1] 31/20
Boca [1] 2/13
bona [7] 51/23 52/5 52/9 52/13 52/23 52/23 55/4
bonded [1] 41/24
bonding [1] 56/25
book [1] 35/24
both [4] 7/5 31/9 38/12 56/14
bought [2] 41/5 41/22
break [2] 36/8 36/25
briefed [1] 27/1
briefing [1] 44/7
briefs [1] 38/20
Brig [1] 12/25
bring [20] 15/10 15/25 16/2 17/20 18/10 21/19 24/11 24/15 24/25 25/7 26/20 26/23 26/25 31/12 32/11 39/22 42/18 45/3 48/16 54/6
bringing [3] 17/12 31/25 34/22
broadly [1] 14/18
brokerage [1] 28/17
Brooks [5] 2/8 2/8 3/15 30/16 31/7
brother [2] 18/4 22/4
brought [4] 24/23 25/17 49/25 56/9
buck [1] 43/14
building [4] 2/9 29/21 29/23 40/8
bunch [1] 4/22
burden [3] 6/15 7/3 46/11
business [3] 13/22 14/20 40/11 41/11 41/17
buy [6] 22/14 28/5 39/20 40/1 41/11 41/17
buyer [5] 13/19 13/22 49/21 49/23 50/6
buyer-purchaser [1] 50/6
buyer-seller [1] 49/23
buys [1] 19/7

**C**

C-a-n-a-v-a-n [1] 10/9
C-a-p-a-y-a [1] 15/7
calendar [2] 32/20 32/21
call's [1] 32/20
called [1] 21/9
came [10] 15/3 23/19 27/25 29/9 40/5 40/10 40/20 41/11 42/10 55/3
can't [6] 26/12 36/3 43/13 45/7 45/13 47/4
Canavan [1] 10/9

cannot [2] 19/19 42/24
Capaya [1] 15/7
captain [1] 43/20
carefully [1] 56/11
cargo [1] 7/17
case [95]
cases [24] 10/7 12/14 12/16 12/17 12/19 12/23 19/2 19/3 19/3 19/10 19/17 19/22 22/18 44/2 44/6 44/24 45/4 47/9 47/15 47/17 48/25 49/19 49/23 56/14
cash [1] 14/20
category [1] 43/6
causal [1] 15/18
cause [9] 4/10 6/17 7/3 21/25 23/3 23/4 25/6 39/2 44/8
caused [1] 9/5
causes [2] 7/12 48/8
Cayman [1] 5/23
certain [1] 26/24
certainly [5] 14/2 20/12 27/6 36/3 38/17
certificate [2] 11/6 59/7
Certified [1] 59/9
certify [1] 59/9
cetera [1] 18/25
Chalos [2] 2/2 2/5
chance [2] 37/8 38/4
change [2] 34/1 34/4
charter [4] 28/13 28/15 28/16 45/12
Circuit [20] 10/8 10/10 10/18 13/5 13/8 13/13 22/6 39/24 41/19 42/7 42/8 42/17 44/19 44/23 44/25 45/21 45/23 46/12 46/15 46/16
circumstances [1] 4/14
cite [3] 29/8 40/2 51/17
cited [10] 10/6 12/16 13/16 15/6 22/18 44/2 46/24 49/4 49/25 56/15
cites [1] 45/1
CIV [2] 1/2 3/4
civil [2] 12/16 12/18
claim [43] 3/21 8/17 8/25 10/5 12/5 14/15 16/2 16/7 17/13 17/20 18/10 21/20 22/12 23/3 24/11 24/14 26/20 42/22 43/3 43/5 45/4 46/23 46/25 47/2 47/21 50/19 50/22 50/22 52/6 54/21 52/3 52/5 54/14 54/21 54/21 54/24 55/1 55/2 56/23 56/24 57/5 58/11 58/15
claimed [1] 24/14
claiming [8] 17/4 53/19 55/8 55/17 57/9 57/11 57/19 57/21
claims [7] 6/14 9/20 12/17 43/23 51/9 51/11

53/3
clarify [2] 34/16 48/25
clear [2] 46/3 49/19
clearly [3] 6/5 38/11 38/13
Clematis [1] 1/18
client [2] 14/25 14/25
closely [1] 12/23
closing [3] 11/11 11/14 38/6
closing's [1] 36/21
club [2] 5/6 5/7
co [14] 2/2 2/5 3/15 10/8 30/17 31/7 40/16 40/20 41/1 41/5 41/16 42/2 42/6 42/14
co-counsel [2] 3/15 30/17 31/7
co-venturer [1] 42/14
co-venturers [7] 40/16 40/20 41/1 41/5 41/16 42/2 42/6
Coast [2] 39/25 56/12
Coast-Newlin [1] 56/12
collecting [1] 32/14
collection [1] 12/21
combine [2] 46/6 46/7
comes [2] 49/4 53/3
coming [4] 20/5 31/16 35/7 58/25
comment [1] 25/19
comments [1] 56/10
common [4] 19/5 29/19 29/25 46/10
community [1] 46/9
companies [1] 43/8
company [18] 13/18 16/4 16/7 25/10 25/15 40/15 40/16 40/17 40/22 40/23 41/2 41/8 41/10 41/12 41/16 52/4 52/4 55/3
complaint [2] 21/19 24/5
complicate [1] 41/14
concede [1] 45/6
conceded [2] 36/11 37/17
conceding [1] 27/17
concern [2] 33/17 34/16
concerned [2] 17/10 45/18
concerning [2] 12/24 25/14
concession [7] 23/14 28/25 29/3 35/18 35/19 36/10 36/16
concessions [1] 28/20
Concha [4] 42/22 42/23 43/3 45/1
conclude [1] 24/18
concluded [1] 59/5
conclusion [1] 42/10
conclusive [2] 11/7 11/25
conduct [3] 6/25 9/5

13/15
conferred [1] 37/10
confusion [2] 34/21 35/10
Congress [1] 12/21
connection [1] 11/2
consent [1] 7/20
consideration [4] 21/15 21/17 21/25 24/22
considered [5] 10/24 13/6 19/8 20/3 35/25
considering [1] 56/23
consistently [1] 59/6
construct [1] 5/6
construction [2] 14/6 40/8
construed [1] 14/19
contention [1] 34/8
contest [2] 23/23 27/22
continue [1] 51/1
continued [1] 50/16
contract [5] 48/18 48/19 48/24 49/20 50/2
contrary [1] 29/9
control [3] 35/9 46/10 46/11
controls [1] 26/24
Conversely [1] 19/14
Conversion [2] 15/4 15/5
Coral [2] 2/4 2/7
Cornwell [2] 2/11
corporate [1] 18/7
corporation [2] 5/23 26/25
corporations [1] 28/4
correct [14] 16/4 17/3 17/18 23/4 31/8 31/20 34/25 35/2 35/2 39/11 50/20 50/20 54/1 59/10
correctly [1] 40/13
couldn't [2] 40/14 40/21
counsel [14] 3/5 3/15 20/20 21/16 21/21 25/6 26/21 30/17 31/6 31/7 39/18 44/3 45/20 46/15
count [3] 8/10 8/13 14/10
count 1 [2] 8/10 8/13
count 3 [1] 14/10
County [1] 21/7
couple [1] 30/20
course [5] 5/16 7/15 13/22 15/2 54/18 55/5 55/25
court [100]
Court's [4] 21/24 24/21 53/12 54/6
courtroom [1] 20/16
courts [6] 9/2 9/2 9/5 13/13 19/18 42/24
covered [1] 31/13
COWELL [3] 1/3 3/3 16/18
CPE [1] 1/17
create [2] 18/8 46/8

**C**

created [1] 47/10
creates [1] 14/13
crew [1] 15/5
criminally [2] 42/15 42/16
CRR [2] 1/17 59/15
current [1] 44/12
currently [1] 15/22
customs [2] 12/22 12/24

**D**

D'Natalin [1] 5/25
damages [1] 9/5
date [1] 5/24
Dated [1] 59/12
days [1] 6/4
de [1] 42/8
deal [2] 19/5 31/25
dealing [6] 22/7 22/7 32/8 44/6 49/12 49/13
deals [3] 32/5 44/18 44/22
decide [4] 15/13 23/1 24/3 32/4
decided [1] 39/24
decides [1] 56/22
deciding [2] 22/22 54/11
decision [6] 34/1 35/23 42/16 42/20 44/21 46/16
deck [1] 51/2
deems [1] 15/11
defendant [3] 10/2 12/17 13/12
defendant's [1] 47/5
defendants [9] 1/7 2/14 4/5 5/15 9/13 9/17 13/21 15/24 21/14
defense [5] 4/12 10/5 17/23 20/11 49/25
defined [2] 11/2 51/19
definitely [1] 34/7
definition [1] 13/22
definitively [1] 6/19
defraud [1] 5/17
defrauded [3] 47/19 55/9 55/11
defrauder [1] 52/6
defrauding [2] 48/1 48/7
delivery [1] 14/6
Delta [1] 5/21
demonstrate [3] 6/16 15/15 26/22
demonstrates [1] 39/19
dependent [2] 11/6 12/1
deposit [5] 6/2 6/7 9/15 9/16 14/3
deprived [7] 14/2 14/4 42/12 55/16 55/17 55/20 55/21
derivative [10] 13/15 15/25 16/2 16/23 18/10 24/11 24/14 26/20 26/23 27/1
derivatively [1] 3/7
derive [1] 12/19

derived [1] 9/25
describing [1] 40/25
designative [1] 5/16
detection [1] 13/12
detention [1] 9/5
determination [3] 6/21 24/6 26/19
determinations [1] 23/16
determine [3] 18/19 24/24 25/1
determined [2] 3/23 24/16
determines [2] 24/22 25/4
Dick [1] 10/17
didn't [17] 20/21 28/2 28/2 29/12 34/21 35/6 35/10 38/21 39/12 39/13 48/16 52/1 52/1 52/16 52/24 55/22 56/18
difference [10] 26/13 26/15 33/4 34/5 34/14 35/23 36/10 47/25 48/6 58/6
different [3] 28/4 41/15 51/22
direct [1] 15/18
directly [3] 28/2 29/7 44/22
disagree [1] 39/18
discovered [1] 29/16
discuss [3] 20/7 20/9 31/18
Discussion [1] 31/23
dispute [6] 6/19 14/6 15/13 22/5 25/14 25/15 25/18 45/5 49/2 50/8 50/9
disputes [3] 24/9 24/10 25/10
distinguished [1] 55/15
distributed [1] 5/14
district [14] 1/1 1/1 1/12 8/20 8/21 12/8 13/10 13/13 15/8 41/22 42/1 54/7 54/8 54/8
divide [1] 42/3
dockage [1] 6/11
documentation [3] 11/6 11/8 11/24
documents [12] 5/20 5/24 6/3 18/7 18/7 25/11 36/11 37/15 39/4 39/9 51/17 56/19
does [17] 4/15 9/22 10/16 11/4 13/25 14/24 20/7 20/8 20/9 22/17 25/1 33/4 33/25 35/16 43/10 53/7 53/9
doesn't [8] 18/16 31/25 35/13 35/14 42/13 43/15 44/2 45/15
doing [1] 20/11
dollars [1] 52/21
don't [39] 7/4 18/21

20/23 22/10 23/23 24/14 25/13 25/15 25/17 26/16 27/13 30/13 30/17 30/18 30/24 31/15 31/18 32/2 34/4 34/13 35/22 36/15 37/6 42/19 43/3 43/20 44/10 46/6 48/22 49/10 49/23 50/24 53/16 56/10 56/25 57/9 57/10 58/8 58/14
done [4] 27/25 36/22 43/19 53/13
Donzi [1] 12/7
Douglas [2] 2/3 2/6
down [5] 7/22 14/3 16/12 25/3 36/3
dredge [17] 40/6 40/11 40/13 40/17 40/19 40/22 41/1 41/5 41/15 41/16 41/17 41/22 41/23 41/23 41/25 42/4 42/21
due [1] 46/15
during [1] 26/10
duties [1] 12/22

**E**

E-mail [1] 1/19
each [1] 42/4
earlier [2] 6/24 38/24
easy [1] 18/12
effect [1] 57/17
effort [1] 55/24
Eighth [1] 10/9
either [5] 18/7 29/21 33/14 34/10 46/25
electronics [1] 51/3
Eleventh [1] 13/5
else [4] 27/20 56/3 56/7 58/23
employed [1] 29/16
end [3] 7/7 11/17 11/17
English [2] 12/19 19/5
enhances [1] 51/20
entered [1] 37/23
entities [1] 43/24
entitled [18] 8/15 14/15 14/25 15/1 15/2 15/13 22/15 22/16 29/25 38/14 42/2 52/21 53/10 53/11 53/20 56/1 57/23 59/11
entitlement [1] 30/3
entitles [1] 43/25
entity [4] 18/8 24/12 25/12 51/12
entrepreneur [1] 40/5
equipment [1] 28/4
equitable [5] 9/19 9/21 9/22 14/23 42/14
equity [4] 45/8 53/8 53/9 53/12
escapes [1] 20/6
especially [1] 26/25
ESQ [4] 2/2 2/5 2/11 2/14
essentially [1] 8/13
established [1] 14/22

et [3] 1/6 3/4 18/25
et cetera [1] 18/25
Evans [3] 8/20 9/12 54/7
even [3] 45/11 49/24 55/22
eventually [5] 28/5 33/11 39/20 43/9 52/2
ever [1] 56/25
everyone [2] 15/16 41/7
everything [1] 36/11
evidence [20] 11/7 11/25 15/11 23/6 23/11 23/14 24/3 27/3 27/7 27/10 28/23 31/16 35/16 35/20 36/16 36/17 37/7 37/23 37/25 57/17
evidentiary [1] 30/21
evidentiary-wise [1] 30/21
exact [1] 19/13
exception [2] 16/6 29/17
exclusive [1] 16/5
exhibit [2] 35/24 37/23
exhibits [6] 3/12 5/11 35/25 37/7 37/11 57/3
exist [1] 19/22
existence [1] 29/9
exists [1] 16/6
expand [1] 33/3
expanded [2] 32/25 33/9
expense [1] 29/21
explain [3] 4/24 11/1 51/18
explains [1] 54/20
extrinsic [1] 47/16

**F**

F.2d [3] 10/9 10/17 13/8
F.3D [2] 10/8 40/3
facie [1] 11/25
fact [23] 4/24 14/17 15/15 19/13 19/15 19/18 19/20 22/10 24/16 27/22 32/12 33/11 33/24 34/13 41/14 42/2 45/25 46/13 46/17 48/8 52/7 52/20 55/22
facts [8] 10/25 19/11 21/16 24/12 26/18 26/22 30/4 51/21
factual [10] 18/18 23/1 24/9 24/10 25/10 25/13 25/15 25/18 40/25 44/18
faith [3] 10/4 52/10 52/11
falls [2] 43/6 50/22
familiar [3] 10/19 12/6 45/21
far [5] 17/10 20/21 39/4 44/24 45/17
favor [1] 41/20
federal [5] 9/2 15/14 38/15
feel [1] 35/17
feels [2] 7/2 50/24
felt [2] 47/2 47/8

fide [7] 51/23 52/5 52/9 52/13 52/23 52/23 55/4
Fifth [16] 10/8 13/8 13/13 39/24 41/19 42/7 42/8 42/17 44/19 44/23 44/25 45/21 45/23 46/12 46/14 46/16
Fifty [1] 13/7
fighting [1] 56/1
figured [1] 10/14
file [1] 38/21
filed [7] 3/19 26/6 33/2 38/21 39/4 39/6 39/7
final [1] 23/16
finding [1] 23/1
finds [2] 14/15 53/10
fine [3] 4/16 7/9 8/2
finished [2] 36/23 37/24
finishing [1] 30/19
first [1] 44/24
FL [5] 2/4 2/7 2/10 2/13 2/16
Fla [3] 29/6 29/11 29/11
FLORIDA [16] 1/1 1/7 1/18 8/21 13/3 13/19 15/8 18/9 19/23 20/5 20/7 29/4 38/13 46/4 54/7 54/9
Florida's [1] 13/6
flowchart [1] 5/10
following [2] 37/4 48/14 38/19 56/9
Foot [1] 13/7
foregoing [1] 59/9
forfeiture [2] 12/16 12/19
forget [1] 44/8
formed [3] 5/22 40/15 40/18
former [1] 13/14
Fort [1] 2/16
forth [1] 18/8
Forum [1] 2/9
forward [4] 4/8 38/4 38/19 56/9
found [7] 13/9 13/13 40/12 43/24 52/2 52/7 54/13
Franklin [4] 1/17 59/8 59/14 59/15
fraud [7] 47/6 47/14 47/20 51/22 52/24 54/12 55/7
front [1] 32/16
fulfilled [1] 24/15
full [1] 43/16
funded [1] 51/5
funds [45] 4/19 5/13 5/17 6/8 6/9 6/14 6/17 6/22 9/11 9/11 9/14 9/16 9/17 13/23 14/9 15/1 15/2 15/19 15/21 16/16 17/5 18/23 20/2 21/23 22/1 22/1 22/8 23/19 23/21 26/8 32/14 33/10 33/10 33/14 33/15 38/12 43/2 45/10 49/15 50/16

**F**

**funds... [5]** 50/17 50/19 50/25 55/22 56/2
**further [2]** 20/13 58/3

**G**

**Gables [2]** 2/4 2/7
**general [2]** 14/11 29/15
**gentleman [1]** 51/24
**gentlemen [3]** 3/14 40/9 40/10
**George [1]** 12/7
**gets [1]** 33/9
**getting [1]** 7/8
**give [11]** 4/11 7/10 32/24 40/2 43/10 45/15 48/12 51/4 51/17 57/4 57/16
**given [6]** 22/2 29/2 35/19 43/16 56/25 57/5
**giving [3]** 4/12 8/6 47/19
**glad [1]** 27/5
**Glades [1]** 2/12
**goes [6]** 19/7 35/1 36/12 50/6 50/8 54/20
**going [37]** 3/11 4/24 8/1 11/14 19/4 21/24 22/6 22/11 23/12 23/22 30/24 32/17 33/6 33/10 33/11 33/14 33/14 33/15 34/1 34/2 34/4 34/10 34/14 34/17 34/19 34/19 35/7 35/22 36/9 36/19 36/20 36/21 38/3 42/3 57/12 57/15 57/16
**gone [2]** 12/13 52/24
**good [18]** 3/2 3/9 3/13 3/17 3/18 4/4 4/7 8/22 10/4 13/1 13/9 19/19 19/21 21/11 21/12 52/10 52/11 59/3
**good-faith [3]** 10/4 52/10 52/11
**goods [2]** 13/6 13/19
**got [5]** 4/22 18/8 18/15 46/7 48/25
**governed [2]** 12/2 13/4
**Government [1]** 24/2
**Great [1]** 4/17
**grounds [2]** 6/16 6/21
**guess [5]** 23/13 23/18 29/12 33/14 58/2
**Gulf [2]** 39/25 56/11
**Gulfstar [1]** 13/8

**H**

**H-a-w-l-e-y [1]** 29/6
**Hafele [1]** 32/16
**handed [1]** 47/13
**Handler [5]** 2/11 2/11 3/19 17/15 32/7
**happen [1]** 33/14
**happened [2]** 48/17 52/13
**happens [1]** 34/18
**hasn't [2]** 37/16 45/25

**haven't [2]** 21/4 56/8
**having [3]** 6/22 10/13 43/15
**Hawley [1]** 29/6
**he'll [1]** 58/9
**he's [9]** 18/15 24/15 26/19 28/24 31/12 31/12 33/24 37/14 46/1
**hear [5]** 7/24 20/22 34/1 36/20 38/4
**heard [2]** 21/4 30/22
**hearing [34]** 1/10 4/9 6/16 6/19 6/23 7/8 10/6 10/12 10/13 10/14 11/16 21/23 21/25 22/21 23/3 23/4 23/16 23/22 25/6 27/16 27/17 27/21 28/20 32/15 32/17 34/8 35/12 36/1 36/17 38/22 39/2 44/5 44/8 51/16
**hearings [1]** 39/10
**hears [1]** 23/11
**held [4]** 9/2 12/23 13/5 29/19
**help [2]** 37/18 54/10
**helpful [1]** 7/5
**Henry [2]** 2/11 3/18
**here [18]** 3/3 4/5 6/25 8/24 13/21 27/9 33/5 33/21 33/25 34/5 34/19 35/8 43/21 45/25 46/7 48/21 49/22 54/15
**here's [1]** 34/14
**herein [1]** 55/21
**hereto [1]** 5/1
**highlight [1]** 7/21
**history [1]** 19/4 19/10
**holding [2]** 32/24 46/20
**Honor [132]**
**Honor's [2]** 21/15 32/12
**HONORABLE [1]** 1/11
**hope [2]** 5/10 23/7
**hopefully [1]** 23/5
**hotel [14]** 3/19 3/24 5/5 5/7 5/7 5/15 6/8 9/16 9/18 15/3 17/1 32/14 45/10 45/12
**house [46]** 3/8 3/19 5/2 5/2 5/4 5/7 6/5 9/11 13/24 14/9 15/9 16/24 17/5 17/13 17/16 17/18 17/21 17/25 18/2 18/2 18/23 18/25 19/7 22/2 22/3 22/23 23/19 24/10 27/23 27/25 28/3 28/7 28/9 28/17 33/11 36/14 43/7 43/8 43/12 43/23 43/25 50/16 50/17 51/4 55/21 55/23
**House's [3]** 17/8 27/23 35/9
**However [6]** 9/22 10/5 12/18 20/7 50/5 53/8
**hundred [1]** 30/18
**husband [1]** 3/11

**I**

**I'd [3]** 27/5 47/24 49/6
**I'll [9]** 5/2 5/4 12/25 31/16 31/20 31/21 32/4 37/21 57/8
**I'm [35]** 7/7 10/19 12/10 21/5 22/15 22/16 26/11 27/19 28/14 30/18 30/18 30/21 33/14 33/15 34/1 34/10 34/11 34/23 35/20 36/9 36/20 36/22 39/4 42/3 43/17 43/17 47/19 48/14 49/7 49/18 50/12 54/2 55/13 56/20 57/23
**I've [7]** 6/6 12/13 29/1 30/22 36/2 44/21 54/9
**illuminate [1]** 20/12
**immediate [3]** 9/4 13/11 14/7
**important [2]** 12/3 21/20 30/2
**impression [1]** 44/24
**improper [1]** 31/9
**improve [3]** 23/18 27/19 58/11
**improved [1]** 52/25
**improvement [1]** 51/19
**improvements [7]** 9/24 43/14 51/13 52/16 52/17 52/18 53/23
**Inc [2]** 10/8 15/7
**include [3]** 14/19 14/20 32/25
**included [1]** 44/7
**including [1]** 6/10
**incorrect [1]** 16/4
**increased [1]** 52/25
**indeed [1]** 34/9
**independently [1]** 8/12
**individual [2]** 47/7 51/23
**injuries [2]** 16/5 16/7
**injury [3]** 15/15 15/17 15/19
**injustice [1]** 14/24
**instead [1]** 41/25
**insurance [8]** 13/18 51/15 51/18 52/4 52/4 52/21 54/13 55/2
**insurers [1]** 52/3
**intend [1]** 27/7 27/13
**intended [1]** 3/24
**interest [8]** 5/8 9/20 9/21 9/23 15/16 41/21 43/13 46/9
**interesting [2]** 59/1 59/2
**interests [1]** 46/8
**interior [1]** 29/18
**International [3]** 28/13 28/15 28/16
**interpreted [2]** 10/15 11/3
**interrupt [4]** 11/9 22/20 31/3 40/24
**interrupted [1]** 54/2
**intervene [4]** 3/20 3/25

5/5 33/8
**intervening [7]** 3/7 3/16 4/20 4/21 6/13 15/24 21/19
**intervention [4]** 32/5 32/6 32/8 32/12
**invasion [1]** 15/15
**invoke [1]** 15/14
**invoked [4]** 20/21 20/22 24/20 21/4
**invoking [3]** 21/3 21/5 21/7
**involved [5]** 10/21 13/15 19/18 51/22 55/19
**involves [1]** 14/5
**involving [3]** 9/7 20/10 47/13
**irrelevant [1]** 12/18
**Islands [1]** 5/23
**issue [24]** 6/24 9/11 10/11 10/12 10/23 15/11 15/14 17/19 20/1 20/7 21/17 22/8 23/24 24/8 24/17 29/3 31/17 39/23 43/21 44/24 45/5 57/17
**issue's [2]** 12/2 45/14
**issues [8]** 16/12 18/18 22/7 24/3 43/19 44/6 44/13 46/11
**issuing [1]** 6/21
**it's [38]** 12/2 12/7 12/14 16/4 17/8 21/20 22/23 24/23 26/5 28/6 31/9 34/19 34/19 34/23 35/3 36/9 37/15 38/9 39/7 40/3 44/20 45/17 45/18 46/25 47/20 49/12 49/20 50/6 50/9 51/17 52/9 53/2 53/2 56/10 56/23 58/3 58/15 59/1
**items [3]** 6/11 14/21 51/4
**itself [2]** 15/6 50/10
**IYC [5]** 28/9 28/10 28/12 28/17 43/7

**J**

**jewelry [1]** 19/25
**joined [1]** 40/8
**joint [13]** 29/23 29/24 40/9 45/24 45/24 46/1 46/3 46/8 46/10 46/17 46/18 47/11 55/19
**Jones [9]** 13/7 14/5 49/4 49/17 49/18 50/5 50/5 54/9 54/10
**Jr [2]** 2/8 2/8
**judge [16]** 1/12 27/5 28/17 31/2 31/24 32/16 34/15 39/18 41/19 42/1 42/1 44/20 56/8 56/21 57/9 58/24
**July [2]** 1/8 59/12
**June [4]** 5/22 8/21 44/8 44/8

5/5 33/8
**June 18th [1]** 5/22
**June 21 [1]** 8/21
**jurisdiction [36]** 9/3 9/8 9/22 13/10 13/14 15/15 16/3 19/4 19/9 19/16 20/9 21/20 24/7 24/17 24/19 24/23 25/2 25/5 34/9 38/18 42/9 42/10 42/11 42/13 42/20 43/4 44/16 48/21 50/8 52/8 53/7 53/8 53/16 53/19 54/14 54/16
**jurisprudence [2]** 19/10 19/24
**just [26]** 5/2 6/6 10/13 11/9 16/10 20/24 22/20 23/15 27/2 27/9 31/2 34/15 34/21 35/5 35/10 36/19 39/12 48/9 48/22 50/9 50/12 53/2 56/11 57/4 57/18 57/20

**K**

**KAM [1]** 1/2
**keep [3]** 5/2 7/4 7/25
**KENNETH [1]** 1/11
**kept [1]** 34/16
**kind [1]** 44/18
**kinds [3]** 51/4 52/15 52/15
**Kitchen [1]** 10/9
**know [20]** 3/25 7/3 21/3 31/2 32/2 34/17 35/13 35/22 38/11 42/23 42/23 50/24 52/24 56/24 57/9 57/18 57/20 58/8 58/9 58/14
**known [2]** 5/7 6/17

**L**

**La [4]** 42/22 42/22 43/3 45/1
**laborers [1]** 51/12
**lack [1]** 16/3
**lacked [1]** 15/24
**lacks [1]** 16/2
**laid [1]** 21/16
**lakes [1]** 29/19
**large [1]** 42/6
**last [2]** 10/12 51/16
**later [8]** 5/20 6/12 23/24 23/24 25/19 40/7 43/24 45/12
**Lauderdale [1]** 2/16
**law [28]** 4/24 12/2 13/1 13/3 13/5 13/9 14/12 14/22 18/9 18/20 19/5 22/17 23/10 24/5 26/19 26/24 27/4 36/20 38/13 38/15 43/15 44/11 44/12 45/2 46/3 46/4 46/24 47/18
**laws [1]** 12/24
**lawsuit [2]** 15/10 26/6
**lawyer [1]** 31/10
**lawyer's [1]** 34/2
**lawyers [3]** 31/9 31/11

**L**

lawyers... [1] 32/3
least [1] 25/6
leave [1] 29/1
legal [24] 8/17 8/17 8/25
9/1 12/12 12/13 13/23
14/1 24/3 38/16 42/12
45/2 45/3 45/4 46/5
46/23 46/23 46/25 46/25
47/1 47/2 54/21 54/24
55/1
legally [1] 15/16
lended [1] 17/17
lender [4] 3/20 5/17
17/16 17/17
Leslie [1] 9/12
less [1] 52/22
let [5] 7/3 28/18 29/10
48/25 51/18
let's [3] 10/11 36/25
55/13
Lexis [3] 8/20 12/8 54/8
liability [2] 10/22 10/25
liberal [2] 10/16 11/3
licensed [1] 40/14
lien [20] 14/13 14/14
15/6 22/17 43/11 43/11
43/15 43/16 43/17 43/18
44/1 45/8 45/15 48/12
51/6 53/4 53/4 53/5
53/21 53/21
likelihood [1] 15/20
likely [1] 15/21
Likewise [1] 59/4
limit [1] 10/24
limitation [1] 10/22
literally [1] 29/1
litigant [1] 15/12
litigation [2] 22/6 58/3
little [4] 20/12 29/1
51/21 55/14
LLC [9] 3/8 5/2 5/4 18/3
18/4 18/7 18/9 18/10
22/3
LLLP [1] 5/5
LLP [1] 3/19
loan [9] 3/24 5/6 5/8
5/13 5/17 6/3 6/8 6/9
9/16
looked [1] 46/20
looking [2] 12/12 12/18
lot [5] 12/10 19/3 36/12
37/15 51/16
love [1] 20/17
LTD [8] 1/6 3/4 5/23
5/24 9/9 14/22 53/14
55/25

**M**

mail [1] 1/19
main [1] 8/24
maintain [1] 23/18
maintainable [3] 7/15
7/16 54/18
maintained [2] 14/3
14/9

major [1] 29/2
makes [4] 31/10 34/4
49/18 51/13
making [8] 11/12 12/10
12/11 23/16 33/5 34/3
34/5 48/7
Malek [1] 12/25
manager [1] 10/23
managing [10] 18/1
25/16 25/17 25/25 26/2
26/3 26/5 26/10 37/19
37/20
Manuel [2] 2/5 3/11
Marine [1] 28/3
maritime [33] 6/14 7/17
9/6 12/6 14/11 14/13
14/14 15/6 22/17 22/17
24/16 24/19 24/22 25/2
25/5 43/3 43/10 44/1
44/16 45/7 45/15 47/21
48/12 48/18 48/24 49/20
50/4 51/6 53/4 53/4 53/4
53/21 53/21
market [1] 58/16
MARRA [1] 1/11 3/4
material [2] 5/1 48/8
matter [9] 10/7 13/10
16/3 26/19 35/13 35/14
52/8 54/14 59/11
Matthews [10] 4/5 5/22
17/2 17/4 27/9 27/14
33/20 33/21 52/11 53/13
Matthews' [2] 18/4 22/4
Matthewses [1] 55/25
maybe [3] 23/5 36/5
36/7
McIntosh [18] 2/14 2/14
4/5 12/6 12/9 21/1 21/10
30/20 30/23 31/15 32/22
35/18 36/17 37/8 38/4
39/16 45/25 56/7
me [27] 3/10 3/11 3/12
4/6 5/10 11/20 18/15
20/6 24/3 26/4 27/16
28/18 29/10 32/3 35/24
36/8 36/20 37/10 38/3
40/2 48/1 48/7 48/7 48/8
48/12 48/25 51/18
mean [14] 11/12 16/20
27/16 33/5 34/4 36/6
38/6 38/9 45/1 45/12
46/20 48/9 56/9 57/16
means [2] 47/1 50/15
meant [1] 50/13
meet [1] 13/21
member [16] 5/1 5/3
16/6 16/23 18/2 18/2
25/16 25/17 25/25 26/3
26/6 26/10 26/24 26/25
37/19 37/20
members [2] 18/3 18/3
memorandum [4] 12/17
39/3 39/3 56/15
memorandums [1] 39/5
mentioned [2] 8/8 21/13
merchant [1] 29/15

mere [1] 49/3
Merit [1] 59/8
merits [1] 15/13
met [2] 7/3 38/17
meter [1] 5/19
Mexican [5] 40/17 40/22
41/2 41/8 41/16
Mexico [5] 40/6 40/12
40/14 41/6 41/12
Michelle [3] 2/2 3/6 37/9
Middle [4] 8/20 15/8
54/7 54/8
might [2] 37/18 54/10
million [4] 5/25 6/2 6/6
52/21
mind [3] 20/5 31/15 34/4
mini [1] 6/25
minority [1] 26/25
minute [2] 47/8 55/7
misappropriate [1] 5/17
misappropriated [19]
4/19 9/11 9/14 13/24
15/19 16/16 17/5 18/23
21/23 22/1 22/23 23/2
23/4 23/20 27/18 39/22
43/2 43/23 45/10
misappropriates [1]
15/17
misappropriation [2]
38/12 48/4
misappropriator [1]
4/21
mischaracterization [1]
35/5
mischaracterized [1]
35/6
misrepresentation [1]
48/7
miss [1] 39/14
Mister [1] 20/25
mmm [1] 50/24
model [1] 12/20
moment [2] 20/24 31/4
money [57] 3/21 3/22
3/24 9/24 15/17 17/8
17/17 19/6 19/6 19/7
19/25 20/1 22/13 22/14
22/22 22/23 23/2 23/17
23/17 27/18 27/23 27/25
28/5 28/6 28/8 30/2
34/17 35/3 35/8 35/9
36/13 36/13 38/13 39/20
39/21 40/11 40/20 40/20
41/11 41/17 41/22 41/24
42/3 42/4 42/15 42/17
43/7 43/14 43/22 48/9
51/5 52/12 52/20 53/20
53/22 53/24 57/12
money's [1] 34/18
monies [1] 58/11
morning [12] 3/2 3/9
3/13 3/17 3/18 4/4 4/7
21/11 21/12 21/25 37/13
59/1
motion [6] 1/10 3/20
16/1 32/1 33/2 39/2

motor [3] 12/8 13/8
21/22
move [1] 50/11
moved [2] 3/25 5/5
moves [1] 14/7
Mr. [58] 3/10 5/1 5/22
8/24 12/6 12/9 16/2
16/18 16/20 16/23 17/2
17/4 17/12 17/15 17/20
17/24 18/4 18/5 21/1
21/10 22/3 22/4 24/10
24/14 24/23 25/7 25/14
25/16 26/23 27/9 27/14
30/12 30/20 30/23 31/15
32/24 32/7 32/11 32/22
35/8 35/18 36/17 37/8
37/19 38/4 39/16 40/5
40/15 40/17 40/23 41/12
41/15 41/21 42/5 42/7
45/25 53/13 56/7
Mr. and [1] 5/22
Mr. Black [16] 3/10 5/1
8/24 16/2 16/20 16/23
17/12 17/20 18/5 22/3
24/14 24/23 25/7 25/16
26/23 37/19
Mr. Black's [4] 17/24
24/10 25/14 35/8
Mr. Cowell [1] 16/18
Mr. Handler [2] 17/15
32/7
Mr. Matthews [5] 17/2
17/4 27/9 27/14 53/13
Mr. Matthews' [2] 18/4
22/4
Mr. McIntosh [15] 12/6
12/9 21/1 21/10 30/20
30/23 31/15 32/22 35/18
36/17 37/8 38/4 39/16
45/25 56/7
Mr. Newlin [7] 40/5
40/17 40/23 41/15 41/21
42/5 42/7
Mr. Newlin's [2] 40/15
41/12
Mr. Ricca [2] 30/12
32/11
Mr. Ricca's [1] 31/24
Mrs. [1] 5/22
Mrs. Matthews [1] 5/22
Ms. [3] 3/16 30/23 31/15
Ms. Valdes [2] 30/23
31/15
Ms. Valdez [1] 3/16
much [5] 21/15 38/10
54/10 56/5 56/9
multiple [1] 31/11
must [6] 12/4 15/15
29/17 45/2 45/3 46/22

**N**

name [3] 4/20 20/6 47/4
named [3] 5/18 5/25
42/22
narrow [1] 16/12
nature [1] 9/6

navigating [1] 29/16
Navigation [1] 12/20
necessaries [4] 14/12
14/17 14/18 22/15
necessary [4] 5/14 15/11
24/17 24/24
necessities [1] 12/24
need [15] 6/16 7/22
18/18 23/14 27/11 27/20
28/19 28/23 34/6 36/6
49/9 49/17 51/17 53/16
56/24
needed [1] 14/19
needs [6] 7/25 23/6 24/2
31/13 35/17 35/17
never [1] 36/2
new [1] 51/2
Newlin [14] 39/25 40/5
40/17 40/20 40/23 41/15
41/21 42/5 42/7 55/14
55/15 55/19 55/20 56/12
Newlin's [2] 40/15 41/12
Next [2] 3/10 3/10
no [44] 1/2 5/13 9/21
11/21 15/10 16/19 16/21
19/3 19/9 19/14 19/24
20/23 23/20 24/16 24/21
24/22 29/16 35/20 36/4
36/18 37/12 38/9 38/23
39/5 39/5 39/19 43/4
44/2 44/16 45/1 45/24
46/10 47/2 48/3 51/14
51/14 53/2 55/6 55/7
55/7 55/24 56/22 57/4
58/24
None [2] 43/11 46/11
Northern [8] 13/18
51/15 51/18 52/4 52/4
52/20 54/13 55/2
Nos [1] 37/23
nothing [2] 47/10 56/8
novo [1] 42/9
number [10] 3/4 15/18
57/1 57/5 57/11 57/16
58/1 58/3 58/19 58/19
Number
15-81606-CIV-MARRA
[1] 3/4
numerous [1] 13/16

**O**

object [1] 31/11
objecting [1] 37/14
objection [6] 35/25 36/4
36/9 37/11 37/12 37/22
obtain [3] 7/19 8/6 33/9
obtained [2] 9/10 9/15
19/21
obtaining [1] 43/17
obviously [4] 15/21 20/8
22/5 23/9
oceans [1] 29/16
October [1] 12/9
October 22 [1] 12/9
off [2] 31/23 32/24
offer [2] 27/14 37/13

## O

offhand [1] 47/4
Official [1] 1/17
oh [1] 29/17
Ohio [1] 46/24
Okay [30] 3/25 4/3
11/18 16/25 17/12 18/15
19/2 19/23 20/20 21/8
23/8 25/21 26/17 27/2
27/12 28/22 35/4 35/16
35/22 38/2 39/12 39/16
41/13 45/20 54/2 56/13
57/15 57/22 58/8 58/23
old [1] 47/23
onboard [1] 53/3
once [2] 19/17 53/8
one [32] 5/11 7/18 8/5
8/16 10/7 12/15 13/7
18/1 18/4 18/4 22/3
25/14 25/16 25/22 25/23
25/24 25/25 26/2 30/6
31/6 31/10 32/2 32/24
33/6 33/13 34/1 46/1
47/22 48/12 49/24 56/20
57/5
one percent [5] 22/3
25/14 25/22 25/23 25/24
only [20] 4/2 5/3 6/6
6/16 6/20 9/17 9/19 9/21
12/5 13/17 15/1 19/19
37/13 39/4 44/17 49/15
50/22 51/1 52/8 55/14
opening [5] 4/11 4/13
11/12 20/11 22/11
operate [3] 9/24 50/16
53/9
operating [1] 5/18
operation [12] 6/10
15/20 46/8 48/23 49/1
49/11 49/12 49/13 50/13
50/15 51/1 55/24
opportunity [1] 4/13
opposing [1] 46/15
option [1] 7/10
order [7] 3/1 3/23 4/10
8/17 18/19 24/3 39/2
ordinarily [2] 12/2 13/4
ordinary [1] 13/22
original [2] 16/1 44/7
originally [1] 43/7
Otero [2] 2/2 3/6
others [2] 7/19 8/5
otherwise [3] 6/17 8/25
47/14
our [19] 5/16 7/3 8/8
8/24 12/16 13/17 14/25
14/25 27/1 34/8 38/16
39/3 41/23 46/7 50/22
50/25 52/10 53/21 58/5
outside [3] 20/17 21/8
58/1
over [12] 13/10 13/14
14/16 33/25 47/6 47/13
47/16 47/17 48/8 52/14
53/24 54/14
own [1] 29/21

owned [2] 22/4 40/23
owner [24] 8/15 9/10
10/1 10/3 10/4 10/15
10/24 11/2 11/3 14/15
14/22 19/8 20/2 20/3
22/4 25/22 25/23 25/24
29/22 30/2 30/4 39/21
42/12 43/20
owners [2] 7/18 8/5
ownership [18] 9/4
10/11 10/16 10/22 11/3
11/4 11/5 11/7 11/25
12/1 12/18 13/3 13/4
22/16 25/11 25/14 38/15
owns [2] 4/18 18/25

## P

P.C [2] 2/2 2/5
P.L [1] 2/14
PA [2] 2/8 2/11
page [2] 1/15 16/1
page 6 [1] 16/1
paid [5] 6/8 6/9 30/7
52/5 52/21
painted [1] 51/2
Palm [70]
paper [1] 12/14
papers [3] 13/17 27/1
47/5
paramount [2] 21/18
21/22
participating [1] 4/1
particular [1] 15/14
parties [9] 3/23 4/22
4/23 6/20 9/3 16/11 22/5
47/3 50/4
partition [3] 7/13 7/14
54/17
partners [2] 30/5 40/15
party [6] 8/5 8/16 15/14
39/20 42/17 46/22
passed [1] 12/21
pattern [4] 19/13 19/15
21/15 41/14
pay [6] 14/21 27/25 28/5
43/9 43/14 45/11
paying [3] 43/6 43/17
43/24
PB [1] 43/8
people [2] 51/5 52/17
people's [1] 52/12
percent [7] 22/3 22/4
25/14 25/22 25/23 25/24
30/19
percentage [1] 42/4
performance [1] 46/10
perhaps [1] 26/14
period [1] 54/19
person [3] 19/5 29/23
55/16
personam [1] 5/15
persons [2] 29/21 46/5
petitory [4] 8/10 8/10
13/11 46/21
phrase [1] 42/21

physically [1] 52/16
piracy [1] 12/24
Place [1] 2/9
placed [4] 9/12 27/18
30/3 40/22
plaintiff [24] 1/4 2/2 3/7
3/16 4/20 4/21 6/13 12/4
12/10 13/11 15/24 24/2
27/10 27/13 31/7 35/17
39/18 47/6 47/11 47/13
47/15 48/3 48/5 54/21
plaintiff's [5] 21/16
21/21 23/12 32/3 37/23
plaintiffs [3] 21/19 43/1
45/5
plan [1] 4/1
play [1] 3/21
please [4] 3/2 3/5 4/15
37/5
pleasure [1] 5/19
plenty [1] 45/4
plus [1] 6/7
plying [1] 29/18
point [8] 12/15 15/4
18/1 29/2 29/2 36/5 36/7
44/21
pointed [1] 45/23
position [11] 5/16 6/13
17/24 18/19 24/10 25/10
38/16 39/19 42/17 45/2
58/5
positions [1] 31/11
positive [2] 29/6 29/24
possess [2] 12/8
possession [38] 7/11
7/13 7/14 7/17 8/6 8/12
8/17 8/25 9/4 9/7 12/5
12/13 13/12 14/2 14/4
14/8 14/16 14/25 15/1
39/23 42/13 46/21 46/22
46/23 46/25 47/2 53/11
54/14 54/17 54/22 54/25
55/2 55/8 55/18 55/20
55/22 56/2 56/23
possessory [7] 8/14
13/14 41/18 42/11 45/3
45/8 50/24
power [2] 13/20 37/18
powers [3] 32/25 33/9
53/12
practical [1] 4/19
practice [2] 7/15 54/18
precisely [2] 16/8 55/9
predicament [2] 47/11
47/12
prefer [1] 7/10
preliminary [2] 6/20
25/7
present [12] 15/10 23/12
23/14 24/2 25/6 26/22
27/8 28/23 35/17 35/20
57/2 57/16
presented [5] 19/13 23/6
27/3 27/10 35/24
presenting [3] 4/12 7/2
29/2

presume [3] 18/6 34/6
51/11
pretty [3] 18/12 38/10
45/18
previous [1] 10/4
previously [2] 22/19
39/7
price [3] 5/25 58/7 58/7
prima [1] 11/25
principles [1] 14/23
prior [4] 25/17 26/6
26/8 38/20
probable [2] 6/17 7/3
probably [1] 52/2
problem [2] 46/14 51/24
procedure [1] 40/12
proceed [1] 40/10
proceedings [6] 1/10
35/7 37/4 56/18 59/5
59/10
proceeds [2] 30/5 30/7
process [1] 48/15
producing [1] 7/4
promise [2] 11/19 11/22
proper [2] 9/10 56/10
property [10] 7/18 8/15
12/6 15/5 19/24 20/2
20/10 29/20 46/6 51/20
proportion [1] 30/8
propose [1] 4/11
proposition [1] 42/25
prosecutes [1] 16/7
protected [2] 15/16
33/24
proved [1] 22/12
provide [2] 42/17 51/11
provided [6] 5/6 6/2 6/3
14/17 41/17 42/24
providers [1] 28/3
provides [2] 7/11 54/16
pull [2] 20/6 20/10
purchase [32] 5/18 5/25
6/1 6/1 6/5 9/10 9/14
9/24 15/1 18/24 22/24
23/17 26/9 27/19 27/24
29/22 29/23 29/24 42/18
48/19 48/22 49/3 49/15
49/21 50/1 50/2 50/3
50/9 52/12 53/25 55/6
58/7
purchased [13] 4/19
5/24 9/17 14/8 16/15
17/7 19/25 21/22 40/19
43/1 50/15 51/25 55/4
purchaser [10] 10/4
50/6 51/23 52/10 52/11
52/14 52/23 52/24 55/3
55/4
purchaser's [1] 52/5
purchases [1] 36/14
purpose [4] 3/24 6/18
32/15 46/10
purposes [19] 10/24
19/9 21/23 22/21 23/15
23/21 27/16 27/17 27/21
28/20 34/8 35/12 35/23

36/1 36/16 38/3 38/22
39/1 56/25
put [19] 3/20 4/20 6/4
6/22 14/2 15/2 15/19
40/21 41/10 41/11 41/15
47/11 47/12 51/3 51/19
52/14 52/22 53/20 53/22
puts [1] 38/13

## Q

question [6] 13/3 15/12
23/13 25/5 51/8 56/20
questions [4] 9/6 30/20
37/20 50/11
quick [1] 8/1
quote [7] 7/16 10/16
14/6 14/19 16/1 51/19
54/16

## R

raised [2] 10/12 30/24
rather [5] 8/25 9/23
11/11 14/7 14/18
Raton [1] 2/13
Re [2] 10/20 10/25
reach [1] 24/17
read [3] 14/18 49/17
56/11
ready [1] 4/8
real [1] 19/24
realize [1] 51/8
really [8] 8/22 11/21
22/23 30/21 35/8 35/9
44/15 56/8
Realtime [1] 59/9
reason [6] 14/1 23/23
30/1 35/20 47/17 50/23
reasonable [3] 6/16 6/21
38/17
reasonably [1] 14/19
rebut [1] 27/11
recall [6] 6/23 13/16
14/10 47/4
receiver [12] 3/22 32/13
32/15 32/25 33/5 33/8
33/12 33/18 33/24 34/2
34/20 35/9
receiver's [5] 32/15
33/21 34/2 34/5 34/14
recently [2] 38/21 39/13
recess [1] 37/3
recognized [1] 9/6
record [5] 20/20 30/16
31/23 34/15 59/10
records [1] 6/5
recover [3] 4/14 39/22
42/19
redress [1] 16/7
redressability [1] 15/21
refer [6] 8/19 10/17
12/25 14/4 49/6 51/15
referenced [1] 6/7
references [1] 29/7
referred [2] 5/20 29/4
referring [3] 5/3 38/20
38/24
regard [1] 3/21

**R**

regarded [1] 30/6
regarding [3] 13/3 24/9
38/15
regards [1] 30/5
Registered [1] 59/8
registration [1] 11/6
registry [12] 6/15 6/18
6/23 12/1 15/22 33/15
33/16 33/24 34/23 34/24
57/13 58/2
reimburse [1] 53/12
relate [1] 11/1
relation [1] 10/22
relationship [2] 15/18
46/5
release [1] 35/1
released [1] 33/16
relevant [3] 29/7 30/23
58/20
relieved [1] 35/21
rely [1] 44/23
remain [3] 6/14 21/8
58/2
remaining [3] 6/18
37/15 57/13
remember [3] 29/4
41/21 44/10
remodeling [1] 5/15
removed [2] 25/16 26/5
rendering [1] 9/25
renovate [1] 5/6
renovation [1] 5/14
renovations [1] 43/10
repainting [1] 5/9
reply [1] 39/3
reporter [8] 1/17 1/17
7/24 7/25 29/8 29/9 59/8
59/9
Reporters [1] 29/13
represent [1] 21/13
representation [1] 57/8
representing [2] 12/9
17/15
request [1] 43/20
requested [1] 14/21
require [2] 10/16 11/4
required [3] 6/3 14/14
54/22
requirements [2] 8/23
24/15
reserve [1] 27/3
resolve [2] 6/19 18/13
resolved [3] 18/19 24/20
25/3
respect [6] 7/16 7/17
29/17 46/15 49/2 54/19
respectfully [1] 31/24
respond [1] 38/5
responding [1] 24/13
response [2] 12/16 39/3
responsible [1] 32/13
rest [3] 15/22 30/18 57/3
rested [1] 27/14
resting [3] 36/23 36/24
result [1] 47/6

retain [1] 30/7
return [3] 3/22 7/19 8/7
review [1] 42/9
reviewed [1] 37/12
Ricca [2] 2/8 3/15
30/12 30/17 32/11
Ricca's [1] 31/24
right [67]
rights [6] 9/4 20/9 43/11
43/15 43/16 43/18
Rio [1] 15/7
rivers [1] 29/19
RMR [2] 1/17 59/15
road [4] 2/3 2/6 2/12
25/3
roads [1] 40/8
Robert [3] 2/14 4/4 9/12
Rolly [1] 28/3
routinely [1] 9/2
Royal [4] 5/4 5/4 5/6 5/7
rule [37] 7/6 7/11 7/13
8/16 8/18 8/23 9/20 10/6
11/1 20/21 20/22 20/23
21/3 21/4 21/6 21/7
29/15 33/14 33/15 33/19
33/23 41/18 41/20 43/5
44/1 45/8 45/16 46/22
48/17 50/23 53/11 53/16
54/16 54/21 55/9 55/17
56/24
ruled [2] 19/18 41/19
ruling [2] 32/24 33/20
RYAN [2] 1/3 3/7

**S**

S.S [1] 15/7
safe [1] 8/7
safely [1] 19/12
Sailing [1] 13/8
sale [8] 15/22 22/8 50/1
50/2 50/3 50/9 55/6 58/7
same [6] 5/23 12/10
19/15 34/3 43/2 43/6
Santiago [2] 8/19 54/7
sat [1] 36/3
saving [1] 11/20
say [9] 8/3 18/16 18/23
19/12 36/4 45/4 45/12
45/20 45/22
saying [8] 16/14 22/21
35/8 43/2 47/18 49/11
53/10 55/15
says [11] 7/5 18/9 19/15
22/13 29/10 29/15 30/1
42/22 47/19 50/6 51/19
scenario [3] 44/19 49/23
50/7
Schwartz [1] 2/14
Seaboard [2] 10/20
10/25
seated [2] 3/2 37/5
second [5] 10/18 11/9
22/20 40/24 45/9
Secondly [1] 11/5
security [2] 7/19 8/7
seeking [3] 3/21 15/14

46/22
seen [1] 36/2
self [1] 30/6
sell [1] 40/7
seller [2] 49/22 49/23
separate [1] 47/10
September [3] 32/18
32/18 32/19
services [2] 43/6 43/25
set [5] 5/12 12/14 18/8
38/10 55/9
sets [1] 8/22
settled [1] 14/11
several [1] 10/7
SFranklinUSDC [1]
1/19
shareholder [1] 16/6
she'll [2] 5/20 37/13
she's [1] 5/19
shell [3] 39/25 40/7 40/8
shelling [2] 40/11 41/6
ship [7] 15/5 29/20 30/4
30/5 30/5 39/21 39/23
ship's [3] 11/7 11/24
14/20
short [2] 11/17 36/21
shorten [1] 23/6
should [14] 6/14 12/6
14/16 14/20 18/12 18/14
21/8 23/15 23/15 23/20
24/5 24/20 30/25 33/15
shouldn't [1] 18/13
show [14] 4/10 6/6 9/9
14/14 21/25 23/3 23/4
25/6 25/7 38/18 39/2
44/8 45/25 46/4
shown [1] 4/24
sic [2] 6/2 30/6
side [2] 7/5 55/5
signed [1] 37/19
similar [6] 32/17 44/24
46/5 54/12 54/15 55/2
simple [2] 14/6 21/15
since [7] 10/13 13/14
27/17 37/6 37/19 46/1
54/9
sir [3] 20/19 40/3 45/19
site [1] 10/20
sitting [2] 41/19 41/25
situated [1] 4/23
situation [7] 22/10 40/25
48/22 49/22 50/7 51/21
53/2
situations [1] 55/10
slow [1] 7/22
small [3] 40/21 41/21
42/5
sold [1] 40/15
sole [2] 5/3 29/22
solely [1] 38/15
someone [6] 15/17 19/25
21/3 38/13 55/8 55/10
Someone's [1] 20/16
something [7] 24/19
30/22 31/25 39/14 47/1

47/14 50/5
Sometimes [1] 44/5
sorry [6] 7/23 10/8
28/14 49/7 54/2 56/20
sort [2] 40/9 40/9
sought [2] 8/11 52/5
sounds [1] 11/11
source [2] 47/10 47/16
South [2] 2/3 2/6
Southeast [1] 2/15
SOUTHERN [4] 1/1
29/8 29/9 29/12
speak [2] 20/25 30/17
specific [4] 47/22 48/16
48/17 58/19
specifically [10] 11/1
12/22 13/5 15/25 29/15
37/10 37/16 46/21 49/1
52/19
Spirit [2] 10/20 10/25
stage [2] 7/1 12/4
stand [1] 8/18
standard [1] 38/17
standing [5] 15/12 15/12
15/12 16/2 16/5 24/9
37/16 53/7
stands [2] 42/17 42/25
started [1] 21/21
starts [2] 32/21 42/20
state [10] 3/5 3/22 12/2
13/5 13/22 16/1 33/25
35/7 45/14 49/1
stated [2] 13/4 46/21
statement [6] 4/12 4/13
11/12 21/21 22/11 49/10
states [8] 1/1 1/12 8/20
10/17 14/12 38/13 40/7
45/7
statute [2] 53/5 53/21
statutes [1] 12/21
stay [2] 33/15 33/23
staying [2] 34/19 34/24
stays [1] 34/23
steamboat [2] 29/17
29/18
step [1] 20/17
Stephen [4] 1/17 59/8
59/14 59/15
still [5] 13/1 21/4 25/22
25/23 25/24
stipulate [2] 32/23 57/15
stipulating [1] 57/23
stipulation [1] 38/12
stipulations [1] 29/24
stole [3] 19/5 19/6 19/25
stolen [4] 19/7 20/2
22/13 39/20
Stone [1] 10/8
straightforward [1]
45/18
streamlining [1] 56/18
Street [1] 1/18
stuff [2] 52/15
subject [5] 13/10 16/3
52/7 52/8 54/14
submissions [1] 38/25

subrogation [1] 52/6
subsequent [1] 57/7
substantiate [2] 22/19
such [4] 13/14 19/21
31/1 46/20
sue [1] 16/5
suffered [1] 16/6
suggest [4] 9/20 10/2
22/10 44/1
suggested [1] 27/22
suggesting [1] 27/4
suggests [1] 9/19
suit [3] 8/10 25/17 42/11
Suite [5] 2/3 2/6 2/9 2/12
2/15
suits [1] 8/10
summary [1] 38/3
superior [1] 12/5
Supplemental [1] 7/6
supplied [2] 42/4 44/11
suppliers [1] 43/9
supply [1] 14/12
support [4] 6/9 22/18
36/11 44/2
supports [1] 15/5
supposed [2] 7/7 45/10
Supreme [5] 12/22 20/5
20/8 29/4 50/3
sure [11] 16/11 16/13
26/11 27/20 30/18 30/19
30/21 33/8 35/20 36/9
39/13
surrebuttal [1] 56/11
surreplies [1] 39/5
sustain [1] 6/17

**T**

T.F [1] 10/7
table [2] 4/6 36/3
take [5] 23/2 36/7 36/25
37/6 38/14
taken [5] 27/23 37/3
42/15 42/16 55/23
takes [2] 6/13 39/19
taking [5] 9/4 13/12
48/9
talk [3] 47/9 47/16 49/19
talked [5] 51/16 51/16
54/10 55/14
talking [7] 34/16 41/24
49/1 49/18 49/19 55/7
55/8
talks [1] 50/5
tell [7] 7/8 18/15 31/15
31/16 31/20 32/3 36/8
telling [1] 26/4
tenancy [2] 29/19
tenants [1] 29/22
tenants-in-common [1]
29/25
term [3] 10/15 11/3 26/1
terms [6] 5/13 12/14
12/15 25/11 38/6 46/21
testimony [1] 11/16
Texas [3] 41/19 41/22
41/25

**T**

**thank [16]** 16/9 20/14 20/15 21/9 30/10 30/11 39/15 39/17 56/4 56/6 56/16 56/17 58/21 58/24 58/25 59/4

**Thanks [1]** 31/21

**that's [42]** 4/16 7/9 8/2 8/10 8/12 15/21 16/8 17/22 19/6 20/5 21/24 24/21 25/19 31/8 33/17 33/20 34/3 34/21 34/22 35/2 35/2 35/10 44/15 44/20 45/5 45/5 45/13 46/24 47/21 48/21 49/8 49/22 50/18 53/3 53/9 53/24 54/3 55/8 55/20 56/4 57/12 57/17

**theft [4]** 19/8 19/17 19/21 20/10

**themselves [1]** 47/11

**theory [3]** 13/25 40/6 45/9

**there's [29]** 10/7 10/19 15/9 17/19 18/9 19/24 22/5 22/5 23/23 24/22 25/13 25/15 25/18 26/24 27/10 43/19 44/2 44/16 45/4 45/24 46/6 47/9 47/18 47/22 48/3 49/2 53/15 56/22 57/12

**thereby [1]** 9/25

**therefore [4]** 14/24 22/15 29/20 40/14

**thereof [1]** 29/22

**thereto [1]** 29/25

**they're [5]** 32/16 33/11 43/2 56/1 57/9

**they've [2]** 32/16 56/25

**thief [1]** 20/3

**thing [2]** 43/2 50/25

**things [5]** 8/16 11/15 33/13 51/2 51/4

**think [29]** 7/4 11/15 15/16 20/12 20/23 21/4 21/20 21/21 22/11 23/10 23/23 25/5 26/16 26/18 28/8 30/22 30/23 30/24 30/25 31/20 34/13 37/17 42/21 44/4 44/18 46/6 56/10 57/7 57/17

**thinks [1]** 31/13

**those [27]** 9/14 12/17 12/20 19/11 19/22 22/7 23/21 23/21 24/6 25/21 26/18 30/7 33/9 37/12 37/13 37/17 39/3 49/23 51/4 51/4 51/5 52/16 52/17 53/22 53/22 55/10 56/2

**though [3]** 34/20 45/11 53/19

**thought [6]** 31/16 48/14 50/18 51/24 58/10 58/10

**three [4]** 7/12 8/8 37/10 37/13

**threshold [1]** 38/17

**through [3]** 19/3 43/24 56/18

**throughout [1]** 53/13

**Thyssen [1]** 15/7

**tied [1]** 12/23

**times [4]** 5/1 13/17 49/9 55/20

**title [40]** 7/14 8/11 8/17 8/25 9/1 9/7 10/16 11/4 11/8 12/12 12/13 13/15 13/19 13/23 14/1 19/19 19/19 19/20 19/21 19/22 38/16 40/17 41/8 41/10 41/15 45/3 45/5 46/23 46/25 47/1 47/7 47/13 47/19 48/1 48/7 48/8 52/8 52/9 54/17 55/10

**titled [2]** 40/14 40/22

**today [14]** 4/1 4/25 6/19 8/24 10/14 12/11 19/13 20/21 22/11 27/8 30/24 32/9 56/1 56/1

**together [2]** 37/1 46/7

**told [1]** 36/20

**took [2]** 17/2 50/19

**tort [2]** 15/6 19/21

**tortious [1]** 13/14

**trace [1]** 28/8

**traceable [1]** 28/6

**tracing [1]** 36/13

**transcript [2]** 1/10 59/10

**transfer [2]** 13/20 13/20

**trial [1]** 6/25

**tried [1]** 45/14

**true [2]** 9/9 12/1

**trust [1]** 9/12

**try [4]** 7/14 8/11 54/17 55/10

**trying [7]** 10/2 16/11 31/12 31/12 33/25 50/12 55/13

**turn [4]** 30/17 46/16 47/24 48/8

**turned [1]** 47/6

**Twenty [1]** 37/15

**two [9]** 8/16 15/18 18/3 29/20 33/13 40/9 40/10 46/5 50/4

**U**

**U.S [8]** 12/8 12/20 12/22 13/1 40/16 41/10 50/3 54/8

**U.S. [1]** 40/22

**U.S.-titled [1]** 40/22

**UCC [2]** 13/6 13/18

**ultimately [2]** 33/10 52/11

**unable [1]** 19/14

**unanimous [1]** 42/11

**under [22]** 5/13 6/15 7/13 13/6 13/18 14/11 30/4 35/9 38/12 38/17 46/22 48/17 48/20 50/22

**53/14 53/11 53/11 53/16 53/21 54/21 55/17 56/22

**understand [10]** 16/11 16/14 31/14 32/10 34/10 40/13 40/25 49/10 49/18 50/12

**understanding [3]** 25/20 25/22 43/17

**understood [1]** 57/18

**undertaken [2]** 7/20 48/4

**undisputed [4]** 14/3 26/5 26/18 55/15

**unequitable [1]** 30/8

**UNITED [6]** 1/1 1/12 8/20 10/17 14/12 40/7

**unlawful [2]** 9/4 13/12

**unquote [5]** 14/7 14/20 30/8 51/20 54/10

**until [5]** 21/8 27/3 30/7 36/3 55/24

**upon [5]** 27/15 47/20 51/20 57/12 58/11

**urge [1]** 55/12

**urging [1]** 8/16

**us [4]** 7/3 56/14 56/25 57/2

**used [24]** 3/24 6/9 9/24 14/21 18/24 22/14 22/14 22/24 23/17 23/18 26/8 27/19 27/24 28/5 39/20 40/8 40/11 41/6 41/10 42/18 43/9 43/14 45/11 45/12 47/16 50/25 53/25 55/23 58/11

**using [4]** 9/10 9/15 12/20 52/12

**usually [1]** 51/11

**utilize [1]** 13/23

**V**

**Valdes [6]** 2/2 2/5 3/6 3/11 30/23 31/15

**Valdez [1]** 3/16

**valid [2]** 6/14 58/3

**value [3]** 51/20 52/25 58/17

**various [2]** 36/14 43/24

**vehicles [1]** 19/24

**vendors [2]** 28/9 43/11

**venture [10]** 40/9 40/12 41/6 45/24 45/24 46/1 46/3 46/8 46/19 47/12

**venturer [2]** 42/14 55/19

**venturers [8]** 40/16 40/20 41/1 41/5 41/16 42/2 42/6 46/17

**versus [11]** 3/3 8/19 10/9 10/17 12/7 13/7 15/7 20/3 29/6 39/25 54/7

**very [17]** 8/21 11/15 11/17 12/2 12/5 15/21 30/1 39/23 40/21 42/5 46/3 47/22 49/18 54/14 55/2 56/5 59/2

**vessel [113]**

**vessels [4]** 8/14 9/7 19/24 29/15

**vest [1]** 9/25

**via [2]** 19/21 47/14

**victim [2]** 19/8 20/1

**view [6]** 23/14 28/19 28/24 35/17 36/10 36/16

**voyage [2]** 7/20 8/6

**W**

**wait [4]** 27/6 45/9 47/8 55/7

**walked [1]** 20/16

**want [13]** 11/15 12/15 16/10 27/2 30/13 30/17 30/18 34/16 34/21 35/6 35/10 47/20 57/20

**wanted [4]** 39/12 39/13 40/6 57/18

**warm [1]** 7/8

**warrant [1]** 6/22

**wasn't [5]** 46/9 48/4 50/2 51/25 52/11

**waters [1]** 29/18

**We'd [1]** 20/17

**we'll [2]** 28/20 36/25

**we're [19]** 3/21 7/2 21/24 23/22 30/19 32/8 36/19 37/24 49/1 49/12 49/13 53/9 53/10 53/19 53/20 54/15 55/7 55/7 56/1

**we've [6]** 4/22 7/3 7/12 22/18 48/25 51/16

**Weiss [1]** 2/11

**well [32]** 14/11 14/22 16/3 16/10 22/7 23/17 27/7 27/24 28/18 31/2 32/2 33/13 33/19 35/8 35/12 36/5 37/7 42/23 46/14 47/8 53/15 55/6 56/17 57/10 57/14 57/15 57/25 58/5 58/8 58/9 58/15 58/18

**went [2]** 19/3 28/4

**West [4]** 1/7 1/18 2/10 2/12

**what's [5]** 14/14 30/24 38/16 47/25 48/6

**whatever [6]** 7/9 14/1 23/11 34/18 50/23 52/22

**where [16]** 9/3 13/11 14/23 19/17 19/25 20/6 30/21 41/11 48/22 49/11 49/13 49/15 50/7 53/2 55/3 55/10

**whether [27]** 6/21 10/13 10/23 15/12 17/20 20/1 21/18 21/25 22/1 24/6 24/24 26/19 26/24 29/23 30/19 33/21 34/5 34/18 36/8 37/11 37/20 39/21 42/9 43/22 43/25 52/9 58/3

**while [6]** 10/25 11/24

**16/4 20/11 52/1 55/23

**who's [3]** 3/11 5/5 18/8

**whole [2]** 50/24 52/9

**whom [2]** 17/15 32/6

**whose [1]** 42/17

**why [7]** 9/7 30/1 31/18 48/12 50/2 53/9 57/10

**willing [2]** 32/23

**wise [1]** 30/21

**within [5]** 6/4 19/15 30/3 47/5 49/4

**without [5]** 7/20 22/22 23/1 27/23 37/22

**witness [2]** 20/17 21/2

**witnesses [8]** 4/14 7/2 7/4 20/17 21/8 28/19 29/1 29/2

**won't [3]** 12/13 13/18 14/13

**words [5]** 33/2 42/15 45/9 47/10 49/21

**work [4]** 27/25 28/5 43/19 53/12

**worker [1]** 53/3

**workmen [1]** 43/9

**worry [1]** 53/16

**wouldn't [2]** 42/11 42/18

**wrongfully [2]** 42/12 42/18

**Y**

**yacht [20]** 5/19 5/24 6/1 12/8 13/8 21/22 22/9 22/12 22/14 22/15 22/16 22/24 23/17 23/18 28/13 28/15 28/16 45/11 45/11 56/23

**yard [1]** 28/3

**yeah [6]** 28/12 31/5 31/5 38/8 38/8 47/22

**year [2]** 52/2 52/14

**yes [35]** 4/9 8/4 11/10 11/21 16/17 17/6 17/9 17/11 17/14 18/11 18/17 19/1 20/4 20/19 21/5 25/24 26/7 28/8 30/15 33/7 34/7 36/12 37/14 38/1 39/1 39/8 40/3 41/3 41/20 45/19 46/18 49/14 50/7 51/10 52/19

**yesterday [3]** 3/20 4/1 32/15

**you'll [2]** 5/20 38/4

**you're [26]** 7/8 7/25 11/12 11/13 11/16 11/20 15/17 16/14 17/14 17/10 21/7 26/4 27/4 27/17 34/3 34/5 35/20 40/25 44/17 45/17 47/18 49/19 57/11 57/19 57/21 57/23

**you've [4]** 19/2 27/15 36/11 57/5

**yourself [1]** 43/15